359 So.2d 1256 (1978)
Margaret B. Everett, wife of/and Gary EVERETT
v.
Daniel W. GOLDMAN, M. D., et al.
No. 60959.
Supreme Court of Louisiana.
May 22, 1978.
*1260 W. K. Christovich, Christovich & Kearney, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Donald B. Ensenat, Asst. Atty. Gen., Louisiana Dept. of Justice, for State of La., intervenor-respondent.
Samuel S. Dalton, Earl B. Gray, New Orleans, for plaintiffs-respondents.
John V. Parker, Sanders, Downing, Kean & Cazedessus, Baton Rouge, for The La. State Medical Society, amicus curiae.
Jesse D. McDonald, Hudson, Potts & Bernstein, Monroe, for Medical Societies of Ouachita, Orleans, Calcasieu, Rapides, Lafayette & Jefferson Parishes, amicus curiae.
Robert J. Conrad, Jr., Frank M. Adkins, Sam A. LeBlanc, III, Adams & Reese, New Orleans, for Metropolitan Hospital Council, amicus curiae.
David W. Robinson, Robert L. Roland, Watson, Blanche, Wilson & Posner, Baton Rouge, for The La. Hospital Assoc., amicus curiae.
Paul H. Dué and Robert D. Downing, Dué, Dodson & deGravelles, Baton Rouge, for La. Trial Lawyers Assoc., amicus curiae.
Darryl J. Foster, Robert N. Ryan, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for La. Dental Assoc., amicus curiae.
CALOGERO, Justice.
This is the first case to come before this Court testing various provisions of Louisiana's Medical Malpractice Act first passed in 1975. La. R.S. 40:1299.41 et seq.
We granted a writ of review on application of defendant Daniel W. Goldman, M.D. who complained of the trial court ruling by which four provisions of the Medical Malpractice Act were declared unconstitutional.[1]
The litigation was prompted by the purported negligence of three medical doctors *1261 and a medical clinic during December of 1975 and January of 1976. Plaintiff claims that she had become pregnant, her condition was misdiagnosed, she was subjected to abdominal x-rays, and she was thereafter required to undergo a therapeutic abortion. She and her husband filed suit in May of 1976 against the various doctors, the medical clinic and their several insurors seeking in their petition and its prayer an express dollar amount in the sum of $4,250,322.00.
Louisiana Revised Statute 40:1299.41(E) provides that "No dollar amount or figure shall be included in the demand in any malpractice complaint, but the prayer shall be for such damages as are reasonable in the premises." Revised Statute 40:1299.47 provides that "No action against a health care provider covered by this Part, or his insuror, may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section and an opinion is rendered by the panel," unless waived by agreement of the parties. R.S. 40:1299.47(B). Relying upon these statutory provisions, and contending that the plaintiff had not presented her complaint to a medical review panel, one of the defendants, Dr. Goldman, filed an exception of prematurity and an alternative motion to strike the provisions of plaintiff's petition by which a specific dollar amount was sought.
After dismissal of the exceptions for reasons not here pertinent, and reinstitution of same, and following the submission of argument and briefs, among which was plaintiff's contention that the exceptions were baseless because the medical malpractice act was unconstitutional, the trial judge dismissed both exceptions, and in so doing expressly declared unconstitutional four provisions of the medical malpractice statute: R.S. 40:1299.41(E) (no dollar amount allowed in demand) and R.S. 40:1299.47 (pre-suit medical review panel), the two provisions raised by defendant's exceptions; and R.S. 40:1299.42(B)(1) (absolute limit of recovery of $500,000) and R.S. 40:1299.44 (patients' compensation fund), two provisions not at issue in connection with defendant's exceptions.

PROVISIONS OF MEDICAL MALPRACTICE ACT
Prior to 1975, medical malpractice claims whether asserted in tort or contract were treated under our law much like other tort or contract claims. In that year, however, reacting to what it considered a crisis in the delivery of medical services to the people of this state, a crisis ostensibly prompted by prohibitive costs in connection with medical malpractice insurance, the state legislature passed several statutes which for simplicity we will refer to as the Medical Malpractice Act of 1975.[2]
The most significant provisions of the act fit generally in the following scheme. A *1262 health care provider (and this category includes physicians, hospitals, dentists, registered nurses, practical nurses, pharmacists, optometrists, podiatrists, chiropractors, physical therapists, psychologists, or any officer, employee or agent thereof acting in the course and scope of his or her employment) has the option of qualifying under the act. R.S. 40:1299.41(A)(1).[3] If he or she does not qualify, that person is not covered by the provisions of the statute and the patient's remedy is not affected by the terms and provisions of the statute. R.S. 40:1299.41(D). Thus the patient of a health care provider who has not qualified is no different from any other tort or contract victim, while the patient of a qualified health care provider (one who has qualified under the act) is regulated by the act insofar as malpractice recovery is concerned.
The health care provider who chooses to qualify may do so by filing with the Commissioner of Insurance proof of financial responsibility. R.S. 40:1299.42(A)(1). This proof can be a policy of malpractice liability insurance in the amount of at least $100,000.00 per claim or, in the event the health care provider is self insured, proof of financial responsibility in excess of $100,000.00. R.S. 40:1299.42(E). The provider must also pay a surcharge which is an amount determined by the Louisiana Insurance Rating Commission based upon actuarial principles; that sum cannot exceed twenty percent of the costs to each health care provider for maintenance of financial responsibility (his $100,000.00 policy, etc.). R.S. 40:1299.42(A)(2).
The health care provider who qualifies under the act gets the advantage of the provisions thereof, one of which is that the total amount recoverable from all defendants for any injury or death of a patient may not exceed $500,000.00 plus interest and costs, R.S. 40:1299.42(B)(1); and a particular health care provider is not exposed to an amount in excess of $100,000.00 for all claims of malpractice because of injury to or death of any one person, R.S. 40:1299.42(B)(2). Thus, the act allows a subscriber to limit directly the maximum amount of his total liability for any malpractice claim which arises after he enters the program.
Under the act, the $500,000 limits are structured in the following way. The single claimant can get no more than $500,000 including $100,000 from each liable doctor and the balance from the patients' compensation fund. R.S. 1299.42(B). The patients' compensation fund which is made up of the annual surcharges is administered by a risk manager, an insurance company chosen by the Commissioner of Insurance for this purpose in accordance with the public bid laws of the state. See R.S. 40:1299.44; R.S. 40:1299.41(A)(10). Thus, while the malpractice victim with a meritorious legal claim who is a patient of a qualified health care provider is limited to recovery of not more than $500,000, he is presumably assured of recovery of at least $100,000 by virtue of the liability insurance and/or other financial responsibility security. Moreover, he may receive an additional $400,000 from the patients' compensation fund, but only to the extent that there is enough in the fund to honor all claims.[4] Under the scheme, all claims from the patients' compensation fund are computed on December 31st of the year in which the claim becomes final and are paid on or before January 15th of the succeeding year. R.S. 40:1299.44(A)(7). Should the fund be insufficient to pay in full all claims awarded during a calendar year, the amount paid to each claimant is to be prorated and any amounts due and unpaid are to be paid, to the extent *1263 funds are available, in the following calendar year.[5]
Linked to these limitations on awards is the act's prohibition against ad damnum clauses. By this legislation Louisiana has statutorily precluded a prayer for a specific amount of damages in an action for negligent health care. In his petition the malpractice victim of a qualified provider may ask only for "such damages as are reasonable in the premises," not a specific dollar amount. R.S. 40:1299.41(E). This provision assertedly is beneficial to health care providers because it prevents the possibility of a jury's being unduly impressed by the quantum of damages sought in the petition. It is intended to prevent the implementation in the public consciousness of inflated ideas of what claims are worth. 50 Tul.L. Rev. 655, 669-70 (1976); 1975 Duke L.J. 1417, 1451-53 (1976). It is hoped by the act's proponents that by countering these psychological causes of large awards the size of malpractice judgments will gradually shrink to "acceptable" levels. 50 Tul.L. Rev. at 670. The consequent reduction in total dollar recoveries would assertedly ease the insurance premium burden and encourage continued medical care by a great number of practitioners.
A second advantage to a health care provider who has qualified under the act is that his patient must provoke a medical review panel and receive an opinion from it before he can file suit in a court of law. R.S. 40:1299.47. Although this requirement can be waived by the agreement of both parties, it is assumed that most malpractice cases against health care providers will be filtered through such a panel.
Under the Louisiana act the medical review panel is made up of three physicians and a nonvoting attorney-chairman. R.S. 40:1299.47(C). Two of the physicians are selected by the plaintiff and defendant respectively, and these two choose a third, all of whom are required to serve. Evidence is presented to the panel only in writing by such means as medical charts, laboratory tests, depositions, and the like. Any party can cause to issue subpoenas duces tecum in aid of the taking of depositions and the production of documentary evidence. Either party may question the panel regarding any matters relevant to issues to be decided by the panel. Under certain conditions the panel may consult with medical authorities.
The sole duty of the panel is to express its expert opinion(s). Within thirty days but in all events within one hundred and eighty days after selection of the last member of the panel, the panel shall render signed and in writing one or more of the following expert opinions:
"(1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.
(2) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.
(3) That there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court.
(4) Where Paragraph (2) above is answered in the affirmative, that the conduct complained of was or was not a factor of the resultant damages. If such conduct was a factor, whether the plaintiff suffered: (a) any disability and the extent and duration of the disability, and (b) any permanent impairment and the percentage of the impairment. " R.S. 40:1299.47(G).
No findings are made by the panel as to damages.
*1264 The findings of the medical review panel are not binding on the litigants. The claimant, whose time of filing a suit is suspended until ninety days following issuance of the opinion by the panel, may file suit in a court of law. R.S. 40:1299.47(A). The report containing the panel's opinion will be admissible as evidence in later litigation, but the expert opinion shall not be conclusive and either party has the right at trial to call at his cost any member of the medical review panel as a witness.
Pretrial screening through a medical review panel is designed to weed out frivolous claims without the delay or expense of a court trial. It is thought that the use of such panels will encourage settlement because both parties will be given a preliminary view of the merits of the case. 1975 Duke L.J. 1417, 1456-63. If a claim is found by the panel to be without merit it is thought that the claimant will be likely to abandon his claim or agree to a nominal settlement. Martin H. Redish, Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications, 55 Tex.L.Rev. 759 (1977); 50 Tul.L.Rev. supra at 681; U.S. Dept. of Health, Education & Welfare, Pub.No. (OS) 73-88, Medical Malpractice: Report of the Secretary's Commission on Medical Malpractice, p. 91 (1973). Moreover, a plaintiff who gains a favorable opinion from the panel may be able to negotiate a favorable settlement with his defendants, a procedure which also avoids much of the time and expense of a trial. HEW Report, supra at 91; Mallor, A Cure for the Plaintiff's Ills?, 51 Ind.L.J. 103, 106-07 (1975). See Anderson v. Florence, 288 Minn. 351, 181 N.W.2d 873 (1970). Thus, to the extent that the use of medical review panels encourages settlement of suits before trial, litigation costs will probably be reduced. Because out of court settlements usually do not garner the publicity of jury verdicts it is also hoped by proponents of the legislation that publicity concerning the award figure will be minimal and that this fact will gradually reduce awards granted by juries. Redish, supra at 767. Additionally since jury awards are believed generally to be larger than settlements, the increase in prevalence of the latter should serve to reduce the overall payment of claims. Thus, litigation costs and actual awards are expected to be lessened by virtue of the employment of pre-suit medical review panels.[6]
The provisions of the medical malpractice act are statutorily declared severable. Acts 1975, No. 817 § 2; Acts 1976, No. 183 § 8; Acts 1977, No. 143 § 2.

LIMITATION OF LIABILITY AND PATIENTS' COMPENSATION FUND PROVISIONS
The four provisions of the medical malpractice act which the trial judge in this case declared unconstitutional form the principal means by which health care providers in the private sector are to be treated differently from other tort perpetrators in an effort to solve the feared medical malpractice crisis. The absolute limit on recovery to $500,000 as provided for in R.S. 40:1299.42(B)(1) and the structure of the patients' compensation fund as set out in R.S. 40:1299.44 together form part of the mechanism by which qualified health care providers limit their liability. The medical review panel procedure set up through R.S. 40:1299.47 is intended to insulate health care providers from fighting frivolous claims through expensive and tedious court procedures, and to encourage settlement of clearly meritorious claims. The ad damnum proscription of R.S. 40:1299.41(E), while of *1265 less importance to the entire scheme, is expected to contribute to the gradual decrease in the amount of awards made by juries in those cases that do go to trial.
In its judgment, the trial court declared unconstitutional each of these four provisions. Only two of them, however, were raised by the pleadings. The need for plaintiff to convene a medical review panel before filing suit and the failure of plaintiff to comply with the ad damnum proscription were raised by defendant Goldman's exception of prematurity and his alternative motion to strike. The plaintiff filed no further pleadings in response to defendant's exceptions and motion, but in a memorandum she attacked the constitutionality of the entire statute.
It is our rule of long standing to refrain from considering constitutional issues unless such a determination is necessary to a resolution of the present rights of the litigants in the case. Aucoin v. Dunn, supra; Pettingill v. Hills, Inc., 199 La. 557, 6 So.2d 660 (1942).
Undoubtedly, many aspects of the medical malpractice act will be subjected to judicial scrutiny before it becomes settled to what extent the legislature's remedial effort is consistent with constitutional restraints. However, each provision is entitled to judicial evaluation in the context of a justiciable issue the resolution of which requires its application. The case at bar in its present posture properly presents for consideration but two facets of the medical malpractice act: (1) the requirement that the plaintiff first submit her complaint to a medical review panel, the composition of which is provided by R.S. 40:1299.47(B), and (2) the prohibition against the traditional ad damnum clause praying for damages in a specific dollar amount, as provided by R.S. 40:1299.41(E), second clause. These were the only two provisions of the act pertinent to defendant's objections, see C.Civ.P. art. 852, in the present posture of the case.
Thus, we determine that only the constitutionality of R.S. 40:1299.47(B) and R.S. 40:1299.41(E) are before us. We will therefore make no determination relative to the constitutionality of R.S. 40:1299.42(B)(1) (the $500,000 limitation) or R.S. 40:1299.44 (the patients' compensation fund). For this reason, we will vacate the trial court's judgment holding unconstitutional R.S. 40:1299.42(B)(1) and R.S. 40:1299.44.

CONSTITUTIONAL CHALLENGES: EQUAL PROTECTION
We now turn to an examination of the constitutionality of the provisions of the act which require claims screening through a medical review panel and proscribe use of an ad damnum clause.
The court below found that the medical review panel provision was unconstitutional because various portions of it violated the equal protection clauses of the state and federal constitutions, the due process clauses of the state and federal constitutions, the state constitutional right to open access to the courts, and the state constitutional prohibition against special laws. Because we feel the equal protection challenge to be the most significant, we will deal with it first. The basis of the equal protection attack is that it is only malpractice victims treated by qualified health care providers who must convene the review panel and who may not set out in their petitions a specific amount of damages. Malpractice victims of those who are treated by non-qualifying health care providers are free to file suit without convening a medical review panel and may pray for a specified amount of damages just as in any other lawsuit. Correspondingly, plaintiff argues that the medical malpractice act confers benefits on the medical malpractice defendant who has qualified under the act which are unavailable to other defendants in tort cases. She emphasizes that this differing treatment results from a voluntary action on the part of the doctor, who may choose to qualify under the act or not, and that his action can be taken without notice to his patients.
Both the federal constitution and the Louisiana constitution mandate equal *1266 protection of the laws. U.S.Const. fourteenth amend.; La.Const. art. I § 3. Under traditional analysis this constitutional guarantee means that separate classifications are invalid in circumstances where it is not demonstrable that a "compelling governmental interest" exists (Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)) when the law violates a "fundamental" interest (Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974)); or when a law is based upon a trait which renders it "suspect" (San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). But in all cases where separate classifications are at issue, "the crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment." Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972); see Succession of Robins, 349 So.2d 276 (La.1977). Stated another way, the issue in cases where no fundamental right or suspect classification is present is whether the discriminatory treatment is supported by any rational basis reasonably related to the governmental interest sought to be advanced by it. Succession of Robins, supra.
Certainly in the present case we are faced with a situation where parties similarly situated (victims of malpractice) are treated differently, the malpractice victims of qualified health care providers must convene a presuit medical review panel and are prohibited from praying for a specified sum of money, while victims of health care providers who have chosen not to qualify under the act are not governed by these provisions.
But the statute does not affect fundamental rights or create a suspect classification. Fundamental rights include such rights as free speech, voting, interstate travel and other fundamental liberties. See Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); compare San Antonio Independent School District v. Rodriguez, supra. Suspect classifications are those involving such unalterable traits as race, alienage and religion. Chabert v. Louisiana High School Athletic Ass'n, 323 So.2d 774 (La.1975). The right to immediate commencement of a malpractice lawsuit without panel determination, and the right to state the total of sought damages in a petition are not fundamental rights jealously protected by the highest standard of the equal protection clause. Moreover, patients of qualified health care providers do not comprise a suspect classification. Thus, because the "compelling state interest" test is not appropriate in this case, a lesser standard must be utilized. Under this lesser standard, the thrust of our inquiry becomes this: what valid state purpose is reasonably furthered by this legislative classification.
The valid state purpose said to be served by the two provisions of the medical malpractice act before us is the lowering of the cost of health care generally and the assuring of available medical care for the citizens of the state. We cannot say that the two challenged provisions of the act adopted by the legislature represent an unreasonable response to the medical malpractice problem. Nor are the provisions especially far reaching.
The proscription against the ad damnum clause does not set a limit on an award, nor does it restrict payment of judgment; it merely prevents a plaintiff from praying in his pleadings for a specified sum of money, usually vastly inflated. See Affect v. Milwaukee & Surburban Transp. Corp., 11 Wis.2d 604, 106 N.W.2d 274 (1960); 1975 Duke L.J. supra at 1452. The legislature believes that this proscription will have a beneficent influence in effecting reasonable jury awards, gradually causing them to be reduced to what are viewed as more appropriate levels. We find this enactment rationally related to an appropriate governmental interest, the guarantee of continued health care services for our citizens at reasonable cost.
*1267 Likewise, the requirement that malpractice claims be filtered through a medical review panel is not unreasonable and seems to be a rational effort to accomplish a plausible goal. A panel determination adverse to a malpractice claimant's interest does not preclude his filing a lawsuit. Such a determination would seem to exert subtle pressure on the claimant in a case of little worth to abandon or to settle his claim reasonably, thereby saving the defendant and his insurer the time, expense and worry of apparently needless litigation. And a favorable panel decision will probably aid the claimant in exerting pressure on a defendant to settle the case reasonably, thus treating the malpractice victim to savings in time and expense and to avoidance of possibly risky litigation. In those cases which do go to trial, a plaintiff successful before the panel will benefit from the evidentiary support of the panel's finding and the testimony of the panel members.
In requiring a pre-suit medical review panel the act is not unreasonable; it has no far reaching or especially adverse effect upon the malpractice victim's or health care provider's rights. While the savings in overall cost are yet to be proven we cannot say that this legislative effort will not further the accomplishment of what is surely a plausible goal. As did the Florida Supreme Court in Carter v. Sparkman, 335 So.2d 802 (Fla.1976), we hold that the medical review panel does not exceed constitutional limits.
Plaintiffs also complain that the fact that not all health care providers are required to qualify under the act unfairly allows potential malpractice defendants to control how they will be sued. We find no merit to this argument because we believe that the legislature's decision to allow doctors to decide for themselves whether to join the plan is rational. The present system does not force all doctors to qualify under the plan, but is available for those doctors, among others, who do not presently have malpractice insurance, those who cannot afford the premiums for sufficient coverage without substantially raising their fees, and those who fear future loss of coverage or higher premiums. In offering an insurance plan for such groups as these who might otherwise practice without full coverage, or give up their medical practice, the legislature has reasonably allowed health care providers to decide whether or not they wish to qualify under the act.
We hold that an appropriate governmental interest is suitably furthered by distinguishing between classes of medical malpractice victims as is done in this act and by governing patients of qualified doctors by the clauses requiring a medical review panel and proscribing an ad damnum clause. Accordingly the equal protection clauses of the state and federal constitutions are not offended.

DUE PROCESS
The trial judge held that the medical review panel provision violates substantive due process in that the act bears no real and substantial relationship to promotion of the public health. He found no merit in the defendant's position that the use of the panel guaranteed availability of medical malpractice insurance at reasonable rates by encouragement of settlement of malpractice cases so as to ease the pressure placed on insurance premiums by extremely high jury verdicts.
Basically for the same reasons as those set out in our discussion of the equal protection issue above, we hold that the medical review panel requirement and the ad damnum clause proscription do not violate federal or state guarantees of substantive due process.
A statute may be held to violate substantive due process when it does not bear a real and substantial relationship to an appropriate governmental objective. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); Louisiana State Bd. of Optom. Exam. v. Pearle Optical, 248 *1268 La. 1062, 184 So.2d 10 (1966); City of Lafayette v. Justus, 245 La. 867, 161 So.2d 747 (1964). Stated another way, the test of substantive due process is whether the regulation is reasonable in relation to the goal to be attained and is adopted in the interest of the community as a whole. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); City of Shreveport v. Curry, 357 So.2d 1078 (La.1978).
The two provisions of the medical malpractice act challenged in this litigation operate to eliminate unwarranted recoveries in malpractice actions without depriving a deserving patient-plaintiff of compensation. Screening of claims through the medical review panel is expected to cause many claims to be served without trial; and the prohibition against a petition's requesting a particular dollar amount in recovery is expected to reduce the number of occasions when excessive verdicts are rendered. These influences are expected to limit indirectly the overall amounts paid out by health care providers and, consequently, to ease the insurance premium burden. It is with the goal of avoiding a crisis in medical care brought on by the inability of doctors and others to practice because they are unable to gain malpractice insurance at all, or are unable to gain malpractice insurance at tolerable rates, that the legislature has enacted these provisions. We find that the provisions do bear a real and substantial relationship to the preservation and promotion of the public welfare, i. e. the need for health care for our citizens at reasonable cost. For this reason, we hold that the medical review panel and ad damnum proscription do not violate state or federal guarantees of substantive due process.

ACCESS TO THE COURTS
The trial judge found the medical review panel provision to be an unconstitutional infringement upon a citizen's guaranteed right to access to the courts. He found that the panel causes delay and adds additional expense,[7] and that it is impartially weighted against a claimant because all the voting members of the panel are doctors who render their opinion without benefit of judicial limitation.
The constitutional guarantee of access to the courts is Article I, section 22 of the Constitution which reads: "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." This provision, like the fourteenth amendment to the United States Constitution, protects fundamental interest to a greater extent than interests that are not considered of fundamental constitutional importance. See Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Douglas Public Service Corp. v. Gaspard, 225 La. 972, 74 So.2d 182 (1954). When a claimant is asserting a right not subject to special constitutional protection, however, access to the courts may be restricted if there is a rational basis for that restriction. Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) (upheld appellate court filing fee requirement for litigant seeking increase in welfare payments); United States v. Kras, supra (upheld state statute which required payment of court costs and fees by bankruptcy applicant); Jones v. Union Guano Co., 264 U.S. 171, 44 S.Ct. 280, 68 L.Ed. 623 (1924) (law requiring chemical analysis by state chemist of fertilizer before institution of action for damages upheld).
The right of malpractice claimants to sue for damages caused them by medical professionals does not involve a fundamental constitutional right. Thus, it is to be *1269 tested by the lesser standard of rational basis. Ortwein v. Schwab, supra; United States v. Kras, supra.
The act provides, at the expense of a delay in filing the suit in court, a procedure for review of the claim. The panel determines from the evidence submitted whether there is a basis for the claim, and gives its opinion accordingly. If the panel determines the claim is substantial, the claimant obviously is benefited. If the panel determines the claim is groundless, the claimant is informed of what certain medical experts think of the merits of his claim. If he disagrees with their analysis he may still sue for a vindication of his rights in a court of law. The law specifically provides that prescription does not run during the period the matter is subject to consideration by the medical review panel and for a period of ninety days following its opinion.
Moreover, the fact that the plaintiff may not pray in his petition for a specified monetary sum does not restrict the judge's or jury's setting of damages. And these provisions do not restrict plaintiff's recovery.
In all cases which go to trial the judge or jury remain the final arbiter of factual questions concerning liability and quantum. We find that these two provisions are reasonable, and that they do not unconstitutionally restrict access to the courts. See Prendergast v. Nelson, 199 Neb. 97, 256 N.W.2d 657 (1977); Comiskey v. Arlen, 55 A.D.2d 304, 390 N.Y.S.2d 122 (2d Dept.1976).

SPECIAL LAWS
The trial court further found that the act violated the state constitutional proscription against special laws because the classification under the act does not embrace all health care providers but only those who have chosen to qualify under the act; because the normal legal rules of evidence are statutorily altered as to proceedings before the panel; and because the non-judicial panel wrongly serves in a judicial role.
Article 3, section 12 of the 1974 Constitution prohibits certain kinds of special laws, and the plaintiff urges that the medical malpractice act violates these particular constitutional provisions:
"(A) Prohibitions. Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
* * * * * *
(3) Concerning any civil or criminal actions, including changing the venue in civil or criminal cases, or regulating the practice or jurisdiction of any court, or changing the rules of evidence in any judicial proceeding or inquiry before courts, or providing or changing methods for the collection of debts or the enforcement of judgments, or prescribing the effects of judicial sales.
* * * * * *
(7) Creating private corporations, or amending, renewing, extending, or explaining the charters thereof; granting to any private corporation, association, or individual any special or exclusive right, privilege, or immunity.
* * * * * *
(B) Additional Prohibition. The legislature shall not indirectly enact special or local laws by the partial repeal or suspension of a general law."
The provisions of Article 3, sections 12(A)(7) and 12(B) are clearly inapplicable.
The issue is a bit closer with respect to Article 3, section 12(A)(3) which prohibits the passage of a special law "concerning any civil or criminal actions." Certainly it is arguable that the medical malpractice act is special legislation affecting civil actions in the sense that it applies to a group within a class of persons otherwise subject to liability for their negligent acts according to the usual codal and procedural law. However, this constitutional provision is applicable only where there is concerned *1270 a distinct lawsuit or lawsuits (action or actions) or where the group of affected litigants or lawsuits has no rationally distinctive characteristics.
Neither of these situations prevail here. Whether considered alongside all tort feasors or alongside health care providers who do not qualify under the act, the health care providers who do qualify under the act are a distinctive class whose separate treatment, for the reasons we have recited hereinabove, does not offend the equal protection clauses of the United States and Louisiana constitutions.
Thus, there is no merit to plaintiff's complaints that the class does not embrace all health care providers and that the nornal legal rules of evidence are statutorily altered as to proceedings before the panel. Nor is there merit to the contention that a non-judicial panel serves in a judicial role, because the panel is not an adjudicatory body.
For these reasons we find Article 3, section 12 inapplicable here and plaintiff's arguments in support of her attack that the act is an unconstitutional special law are without merit.

QUID PRO QUO
In various sections of her brief plaintiff argues that the pertinent provisions of the medical malpractice act are invalid on a quid pro quo principle, presumably an argument that the change in the law takes from her and similarly situated litigants certain substantive and procedural rights while giving her nothing (or very little) in return.
The quid pro quo doctrine, which has been mentioned by some federal and state courts, presumably arose from a reading of dicta in New York Central Railroad v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917), which upheld the constitutionality of workmen's compensation laws. Redish, supra at 785. The Court in White, however, held that "No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit." 243 U.S. at 198, 37 S.Ct. at 250.
Even were we to assume the correctness of the plaintiff's underlying argument that the medical malpractice act abrogates a previously existing right while offering no substantial benefit in return, we are aware of no constitutional principle which would be offended by that fact. For this reason, we find no merit in plaintiff's argument that the medical malpractice act shall be invalidated because it fails to offer a quid pro quo.

CONCLUSION
Legislative enactments are clothed with the presumption of constitutionality and regularity. Johnson v. Welsh, 334 So.2d 395 (La.1976). This presumption continues until the party challenging the act's constitutionality establishes that it contravenes some provision of the state or federal constitution. Everhardt v. City of New Orleans, 253 La. 285, 217 So.2d 400 (1968). We have reviewed the many contentions urged by the plaintiff in her attack upon the two pertinent statutory provisions. We find that she has not established that these provisions of the medical malpractice act are unconstitutional. Courts do not rule on the social wisdom of statutes, nor on their workability in practice. Imperfections in legislation are not in themselves grounds for judicial intervention unless those imperfections result in denial of constitutional rights or infringement on paramount statutory rights. James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972). We are satisfied that the two provisions of the act now before us, institution of the medical review panel and prohibition of ad damnum clauses, are not constitutionally invalid.

Decree
For the foregoing reasons the ruling of the trial judge overruling the exception of *1271 prematurity and the alternative motion to strike filed by defendant Goldman is reversed. Defendant Goldman's exception of prematurity is sustained and plaintiff's petition is dismissed as to defendant Goldman. Furthermore, the findings of unconstitutionality made by the trial judge are vacated and two provisions of the medical malpractice act are upheld as constitutional: R.S. 40:1299.41(E) (ad damnum clause proscription) and R.S. 40:1299.47 (medical review panel). The case is remanded to the district court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] The trial court judgment overruled defendant's exception of prematurity and motion to strike and declared portions of the medical malpractice act unconstitutional. Because this judgment was not final, no direct appeal lay to this Court. Were it final Article 5, section 5(D) of the Louisiana Constitution of 1974 would allow a direct appeal where "a law or ordinance has been declared unconstitutional" by a lower court. However, because of our policy of granting review in a case where a law has been found unconstitutional as well as the irreparable harm to be caused to Dr. Goldman (if the ruling below is not correct) in not having plaintiff's claim first reviewed by the statutory medical review panel, we granted defendant a writ of review.

The state intervened in the trial court proceedings under Article 1880 of the Code of Civil Procedure, but did not file an appeal or a writ application nor join in the application of Dr. Goldman. For this reason, the state is not a party before us. Therefore, we will consider the issue urged by the state for our consideration: the need for a party attacking the constitutionality of a state statute in responsive pleadings to notice that attack to the attorney general pursuant to C.C.P. art. 1880. Even were the state properly a party before us we would not consider this procedural issue in light of the fact that the state, while interposing the procedural bar apparently to secure jurisprudential guidance, urges us to rule on the merits of the constitutional issue before us in the litigation. Under these circumstances, any expression by this Court on the procedural issue would constitute an advisory opinion, the granting of which is against our stated policy to render only decisions which affect the current rights of the litigants. Aucoin v. Dunn, 255 La. 823, 233 So.2d 530 (1970).
[2] The original act has been amended twice, by Acts 1976, No. 183, § 8 and Acts 1977, No. 143, § 2.
[3] For ease of description, hereinafter we use the terms "health care provider" or "doctor" interchangeably to refer to the various categories of persons included in this section.
[4] We describe here the manner in which the system is intended to work under the statute. We make no judgment as to the actuarial soundness of the plan nor do we offer any forecast as to the constitutional validity of the maximum recovery provision.
[5] We have been informed in supplemental defense brief that as of March 8, 1978 there was over four million, seven hundred thousand dollars in the patients' compensation fund, and that the insurance commissioner's office estimates that there are at least ten thousand health care providers now qualified for excess coverage by the fund.
[6] Other provisions of the Medical Malpractice Act not especially pertinent to this litigation are provisions concerning the medical malpractice coverage to be furnished by state owned or state operated hospitals in Louisiana (R.S. 40:1299.37); medical malpractice coverage to be furnished employed physicians and others by each agency of the state (R.S. 40:1299.38); $500,000.00 maximum recovery in connection with malpractice claims against persons acting within the course and scope of employment, for and on behalf of the state (R.S. 40:1299.39); and the Uniform Consent Law (R.S. 40:1299.40).
[7] Under the statute it is generally the party who is successful before the panel who bears the panel expense, if he can afford to pay it. R.S. 40:1299.47(1).