395 So.2d 1372 (1981)
Floyd TIMMONS
v.
The MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD OF the CITY OF BOGALUSA.
No. 14046.
Court of Appeal of Louisiana, First Circuit.
March 2, 1981.
Rehearing Denied April 13, 1981.
*1373 Leonard A. Washofsky, Hess & Washofsky, New Orleans, for plaintiff.
John N. Gallaspy, Gallaspy & Paduda, Bogalusa, for defendant.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
Floyd Timmons, a patrolman first class with the Bogalusa Police Department, was dismissed from his job on August 16, 1979. The letter of termination charged him with (1) unwillingness or failure to perform the duties of his position in a satisfactory manner and (2) insubordination. La.R.S. 33:2500(A)(1), (4).
Timmons appealed his dismissal to the Municipal Fire and Police Civil Service Board of the City of Bogalusa, which upheld the dismissal on October 9, 1979. He then appealed his case to the Twenty-Second Judicial District Court for the Parish of Washington, where his dismissal was again upheld on March 26, 1980. This is an appeal from the decision of the Civil Service Board and the district court.

THE FACTS
Floyd Timmons was hired as a patrolman by the City of Bogalusa on March 19, 1976. From the time of his employment until the time of his termination Timmons was involved in a number of accidents which caused him to take some 419 days of sick leave during that period. Timmons missed three weeks of work when he fractured his shoulder while playing with his child; three months of work when he was involved in an automobile accident with his family; and 207 days during the year of trial for injuries received when he was involved in an accident with another police unit on November 16 or 17, 1978. In the accident with the other police unit, Timmons injured his neck. Disc surgery has been suggested by a physician.
Following the neck injury which resulted from the automobile accident, Timmons attempted to return to work on January 19, when he was again placed on full time duty. On January 24, 1979, he was involved in an altercation with a suspect he was attempting to arrest and jammed the ring finger of his left hand. He apparently reinjured his neck at this time and, five days after the altercation, he complained to a doctor that he had cervical problems.
Under doctor's instructions, Timmons returned to light duty following the altercation and was placed on the meter beat, which was a light duty type of work requiring him to ticket vehicles which were violating parking regulations. The meter beat required Timmons to walk a distance of about 1.2 miles once or twice a day and place tickets on the cars which were violating the regulations. On the first day of the meter beat, Timmons worked for about two hours but left the job complaining of "aches and pains." He worked another two days on the meter beat but said he could not continue because of the pain and because of his fear that he might become involved in an altercation and exacerbate his neck injury. During his time on the meter beat, Timmons was required to wear a cervical collar under doctor's orders. Timmons says he was willing to do some work which did not place him in danger of aggravating his *1374 neck injury, but there was no office work at the Bogalusa Police Department for him to do.
Timmons' failure and/or refusal to work on the meter beat was the primary reason for the first charge against him. Bogalusa Police Chief Earl Glynn Penton admitted that 90 percent of the sick days taken by Officer Timmons were taken because of injury incurred in the line of duty. The assistant police chief said he had no complaints about Timmons' performance while Timmons was on the job.
On August 14, 1979, while Timmons was off on sick leave, the assistant police chief saw Timmons' car parked in front of the Disco Utopia Lounge in Bogalusa. Bogalusa Police Departmental Order 79-02 provides that "while on sick leave, no police officer or employee of the Bogalusa Police Department will be allowed to drink in a bar or lounge." The assistant police chief and the chief of police both witnessed Timmons' car at the lounge and the assistant police chief saw Timmons leave the lounge. The chief and his assistant spoke to a bartender, who they said told them that Timmons had consumed some beer while in the lounge. However, at the hearing before the Civil Service Board, the bar owner testified that he did not know whether Timmons had consumed any alcoholic beverages and generally denied that he had told the chief and the assistant that Timmons had. A man whom Timmons sat with at the bar said he and Timmons discussed a little league baseball banquet that they were organizing for their respective little league teams. This man testified that Timmons drank only orange juice while he was at the bar and did not drink any alcoholic beverages. This witness says Timmons remained in the bar for about 30 or 45 minutes discussing the little league banquet. Timmons testified, too, that he consumed no alcoholic beverages while he was at the Disco Utopia Lounge.
Police Chief Penton testified that the main reason he terminated Timmons' employment was because of the barrom violation. The chief said the intent of departmental order 79-02 is to keep off duty police officers who are on sick leave out of the barrooms. "It doesn't say that, I know it, but that was the intent of that," the police chief testified in referring to the barroom prohibition. The chief also testified that Timmons was aware of the intent of the prohibition because he had been disciplined for violating the order on April 9, 1979.

ACTION OF THE CIVIL SERVICE BOARD
After hearing all of the testimony, the Civil Service Board voted unanimously to uphold the decision of the appointing authority in discharging Officer Timmons. Board chairman Durwood Alford made the motion to uphold the decision after making the following statement:
"We will reconvene and I guess we have been through the soul-searching part that we always have to do, and I think that this Board, that we fully recognize the seriousness of the matter and certainly the effect our decision has upon another human being, and we felt that with the two charges that were really made, that one of them really deals with a physical condition and whether he is physically able to work or not, and whether he is able to do the job or isn't, that it certainly is less than clear, and since that issue is being litigated in the court, I think that whether Mr. Timmons is entitled to workmen's compensation, that in the due process of law that that question is going to be answered. With regard to the second charge, the unanimous feelings of this Board is that Mr. Timmons knew very well the rule and what that meant with respect to being in barrooms. We were here for a considerable period of time on another occasion and talked specifically about the rule and whether or not police officers who are off sick should be in barrooms, and we feel that Mr. Timmons *1375 knew fully well what the intent of that rule was, and with that I will make a motion that we uphold the decision of the appointing authority."

ACTION OF THE TRIAL COURT
On appeal to the Twenty-Second Judicial District Court for the Parish of Washington, the Civil Service Board's decision was affirmed. The trial court first noted that under La.R.S. 33:2501, an appeal from a Civil Service Board determination "shall be confined to the determination of whether the decision made by the Board was made in good faith for cause...." The trial court went on to hold that although it appeared from Mr. Alford's oral discourse that the first charge was pretermitted by the Board, "this deferral was an affirmation of the action of the appointing authority in firing Mr. Timmons. The court finds that the Board acted in good faith for cause in affirming the appointing authority on this point."
The trial court further held that even if the Board did not consider the first charge, it properly considered the second charge and properly found that Timmons had violated the order. Timmons' complaint that the Board had considered a past disciplinary action against him in deciding the present insubordination charge was untenable, the trial court found. "The court does not feel that this was a consideration of his prior service record which would preclude a fair and unpartial [sic] hearing and which would amount to a finding of bad faith. Rather, it is merely indicative of the fact that the Board recognized that Mr. Timmons was aware of the nature of the order, a finding which went to the heart of his defense of the violation of Departmental Order No. 79-02." The trial court found no merit to Timmons' constitutional challenges against the barroom order and upheld the Board's action completely.

SPECIFICATIONS OF ERRORS
On appeal to this court, Timmons alleges that the district court erred in finding that he was terminated with legal cause, that the Board was in good faith after reviewing his past violation record, that the Board was in good faith in finding Timmons to be in violation of an order which was vague and subject to divergent interpretations, that the Board was in good faith for going forward with this hearing before Officer Timmons was adequately informed of the charges against him and in finding that the departmental order was constitutional.

FAILURE OR REFUSAL TO WORK
After a thorough reading of the pleadings and transcript of the Board in this case, especially the comments of Chairman Alford preceding his motion for upholding the termination, we are convinced that the Civil Service Board did not act on the charge of failure or refusal to work. As the chairman noted, whether Officer Timmons was or was not able to do his job "certainly is less than clear...." The Board in effect deferred action on the first ground given for Timmons' termination. We so find and though the trial judge was in error as to this point, it is of no moment.

THE BARROOM ORDER
As noted above, Bogalusa Police Departmental Order 79-02 prohibits an officer on sick leave from drinking in a bar or lounge. The order was issued January 23, 1979, with a letter to all members of the Bogalusa Police Department from Chief Penton. The letter addressed the past abuse of sick leave in the department and, in the second paragraph, stated: "In the past, employees on sick leave have been known to go fishing, hunting, and frequenting bars and lounges. This practice will cease." Officer Timmons signed the attached certification indicating that he had received a copy of the new departmental order and the letter to employees.
Although the order itself does not explicitly prohibit an employee from simply being in a bar or lounge while on sick leave, *1376 the intent of the order as expressed in the letter to employees and as told to Officer Timmons on numerous occasions was to prohibit a police officer on sick leave from even being in a bar or lounge. The preponderance of the evidence taken at the disciplinary hearing shows that Timmons knew of the intent of the departmental order. We find, too, that there was a violation by Timmons of the express and literal terms of the departmental order. The order prohibits an officer on sick leave from drinking in a bar, and Timmons admitted on the stand that he was drinking orange juice in the Disco Utopia Lounge when he was discovered by the chief and assistant chief. Appellant's argument that the order only prohibits the drinking of alcoholic beverages is without merit. The departmental order prohibits the drinking of anything in a lounge because the impression given by a person in a lounge with a glass in his hand is that he is drinking alcoholic beverages. Timmons therefore violated the letter and intent of the departmental order.
Timmons claims that the order is a violation of the constitutional guarantee of substantive due process. We disagree. A police departmental order prohibiting an officer on sick leave from drinking in a bar or lounge bears a real and substantial relationship to the appropriate governmental objective of maintaining public confidence in the police force. The departmental order bears a reasonable relation to the goal sought to be attained by the police department, i. e., integrity and confidence in the police force, and the order was adopted in the interest of the community as a whole. Everett v. Goldman, 359 So.2d 1256 (La.1978). It is clearly a valid objective of the police department to prevent off duty sick police officers from frequenting barrooms. Public confidence in the police force could be severely undermined if police officers who were allegedly sick were allowed to continue to frequent bars and lounges.
Also untenable is Timmons' claim that the Board considered past disciplinary actions against him in deciding to dismiss him from the force in this case. The Civil Service Board, having fairly recently sat on a similar charge against Timmons, obviously was aware of the previous charge. We find, however, that the fact that Timmons had been disciplined previously for the same violation was used by the Civil Service Board only to show that Timmons knew the intent of the departmental order he was charged with violating.
The case of Dumez v. Houma Municipal Fire and Police Civil Service Board, 365 So.2d 603 (La.App. 1st Cir. 1978) is distinguishable. In Dumez, the court found that the Civil Service Board had considered the previous service record of the officer and that the record of prior disciplinary actions influenced the Board members "to a considerable degree." There was also evidence in that case that the Board members had discussed the charges prior to the hearing. Under those circumstances, the court found the officer did not have a fair and impartial trial. In the case at bar, as mentioned previously, the fact of the prior disciplinary hearing was used by the Board only to show that Timmons knew of the intent of the order. There was no indication that the prior disciplinary actions against Timmons influenced the Board members in this case to any degree or that the Board members discussed the case prior to the hearing.
Timmons claims that the departmental order prohibits him from freely associating with others. This claim, too, is without merit. Timmons could have discussed the little league banquet at his house or at the house of the friend he met at the bar. He was not prohibited by the order from associating with anybody. He was prohibited from drinking in a bar or lounge and he violated this prohibition. We find that the Civil Service Board acted in good faith for cause in dismissing Officer Timmons.
Finally, Timmons' contention that he was not adequately informed of the charges against him is unfounded. The dismissal *1377 letter sent to Officer Timmons clearly sets forth the rules he was accused of violating.
Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed at appellant's cost.
AFFIRMED.