486 So.2d 816 (1986)
Elaine E. McLEAN
v.
Raymond K. HUNTER, et al.
No. CA 84 1386.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
Writ Granted June 6, 1986.
*817 Macallynn J. Achee, Baton Rouge, for plaintiff-appellant Elaine E. McLean.
Carey J. Guglielmo, Baton Rouge, for defendants-appellees Dr. Raymond K. Hunter and Aetna Cas. and Sur. Co.
Before LOTTINGER, COLE and CRAIN, JJ.
COLE, Judge.
This appeal involves a dental malpractice suit filed by plaintiff, Elaine E. McLean, against defendant, Dr. Raymond K. Hunter, and his alleged insurer, Aetna Casualty & Surety Company (Aetna). The primary issue presented is whether the trial court erred in refusing to allow a periodontist to testify on plaintiff's behalf as to the standard of care ordinarily exercised by dentists engaged in a general dentistry practice in Baton Rouge. In addition, plaintiff raises an issue as to the constitutionality of the Medical Malpractice Act, i.e., La.R.S. 40:1299.41 et seq.
The facts of this matter are as follows. Ms. McLean initially consulted Dr. Hunter on December 6, 1977. This visit was on an emergency basis and no malpractice is alleged with respect to it. Dr. Hunter treated Ms. McLean again the following day, but did not see her next until November 13, 1979. She thereafter saw Dr. Hunter on an intermittent basis until she was referred to Dr. Bruce Lovelace, a periodontist, in September of 1981. Dr. Lovelace diagnosed Ms. McLean's condition at that time as chronic, moderate to advanced periodontitis. It was necessary for Ms. McLean to undergo extensive treatment for this condition.
On August 27, 1982, Ms. McLean, in compliance with La.R.S. 40:1299.47, filed a request for review of a malpractice claim with the Commissioner of Insurance. The acts of malpractice alleged in this claim against Dr. Hunter were: failing to advise Ms. McLean she had periodontitis; failing to set up a treatment plan; failing to measure or chart the existence of periodontal pockets caused by the disease; failing to perform "flap surgery" to treat the disease; failing to refer Ms. McLean to a periodontist for treatment; failing to instruct Ms. McLean in proper methods for cleaning her teeth; and, affixing a permanent bridge to a diseased tooth. On May 2, 1983, the medical review panel convened to consider Ms. McLean's malpractice claim issued its opinion. The panel concluded the evidence did not support the claim that Dr. Hunter had failed to meet the applicable standard of care and the conduct complained of by Ms. McLean was not a factor in the damage she suffered.
On June 13, 1983, Ms. McLean filed the present suit for damages, making the same allegations of malpractice as previously asserted before the medical review panel. Trial by jury was held on May 2nd through May 4th, 1984. At the close of plaintiff's *818 case-in-chief, Aetna's motion for a directed verdict was granted on the basis no evidence was presented relative to coverage of Dr. Hunter under an Aetna policy. Following completion of trial, the jury returned a verdict in favor of Dr. Hunter and against Ms. McLean, finding Dr. Hunter's conduct was not below the applicable standard of care. The trial court signed judgment in accordance with this verdict on May 8, 1984. Ms. McLean now appeals from this judgment.
In her first specification of error, plaintiff argues the trial court erred in refusing to allow testimony from three periodontists as to the degree of care ordinarily exercised by dentists engaged in general dentistry practices. Upon defense objection, the court ruled periodontists were specialists who could only testify as to the standard of care ordinarily exercised in their speciality and not as to standard of care ordinarily exercised by dentists in general practice. Plaintiff thereupon proferred the testimony of Dr. Lovelace, one of the periodontists called by her, relative to the standard of care among dentists in general practice in Baton Rouge.
Proffers were not made as to the excluded testimony of the other two periodontists called by plaintiff. It is incumbent upon counsel contending testimony was improperly excluded to offer a proffer of the excluded testimony. Engineered Mechanical Services v. Langlois, 464 So.2d 329 (La.App. 1st Cir.1984), writ denied, 467 So.2d 531 (La.1985). In the absence of such a proffer, counsel can not complain on appeal the exclusion of this testimony was error. Id. Accordingly, in the instant appeal we will review the exclusion of Dr. Lovelace's testimony, but not that of the other two periodontists called by plaintiff.
In ruling Dr. Lovelace was not qualified to give expert testimony as to the ordinary standard of care among dentists in general practice, the trial court relied on La.R.S. 9:2794A(1) which provides:
"A. In a malpractice action based on the negligence of a ... dentist licensed under R.S. 37:751 et seq.... the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by ... dentists ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by ... dentists... within the involved medical specialty."
Our reading of this provision does not lead us to agree with the trial court's conclusion it mandates the exclusion of Dr. Lovelace's proferred testimony. While this provision sets forth a plaintiff's burden of proof, it does not specify or limit who may be called to sustain this burden. On this point La. R.S. 9:2794 B provides a party to a malpractice suit has "... the right to subpoena any ... dentist ... for trial to establish the... degree of care ordinarily exercised...." In view of this provision and our examination of the jurisprudence, we conclude the testimony of a specialist should not be automatically excluded in a malpractice suit involving a general practitioner. A specialist's qualification to testify in a given trial must be determined on a case by case basis.
In the instant case, we are inclined to believe the trial court erred in excluding Dr. Lovelace's testimony. Dr. Lovelace was trained as a general dentist before specializing in periodontics. In addition, as a part-time faculty member at the L.S.U. Dental School, Dr. Lovelace teaches periodontics to future general dentists. Thus, he is well acquainted with the training and standard of care expected of general dentists treating periodontal disease. Further, a large portion of Dr. Lovelace's private periodontics practice consists of referrals from general dentists. Dr. Lovelace indicated he often works in conjunction with *819 general dentists in the area of periodontics and is familiar with the standard of care ordinarily exercised by them in this area. For these reasons, we believe Dr. Lovelace was qualified to testify as to the standard of care applicable to Dr. Hunter with respect to the area of periodontics.
However, even though the trial court may have erred in excluding this testimony, this exclusion does not alone appear so prejudicial that its admission would have changed the outcome of the trial. Even with the addition of the proferred testimony, the jury could have reached the same result without committing manifest error. Significantly, testimony to substantially the same effect as the proferred testimony was entered into evidence through the testimony of two general dentists called by plaintiff. The jury had extensive testimony, medical and otherwise, before it in reaching a verdict. While conceding Dr. Lovelace possesses impressive credentials, we are not persuaded that the admission of his proferred testimony would have changed the outcome of trial. Our independent review of all the evidence, including the proferred testimony, does not disclose the result reached was clearly wrong. Accordingly, the error committed by the trial court in this respect does not warrant reversal.
In her second specification of error, plaintiff asserts the Medical Malpractice Act, i.e., La.R.S. 40:1299.41 et seq. unconstitutionally violates her rights to due process, equal protection and confrontation. Plaintiff does not specify which provisions of this act are allegedly violative of her constitutional rights. Plaintiff's entire argument in her brief consists of a statement that she relies on the United States and Louisiana Constitutions in support of her position.
Initially, we note the constitutionality of a statute may not be raised unless its unconstitutionality is specifically pleaded and the grounds thereof particularized. Johnson v. Welsh, 334 So.2d 395 (La.1976); Summerell v. Phillips, 258 La.587, 247 So.2d 542 (1971). While plaintiff has specifically pled unconstitutionality, she clearly has not particularized the grounds for this claim in her brief before this Court. While this Court is thus not required to consider this issue, we choose to do so in this instance.
Although plaintiff asserts the unconstitutionality of the entire Medical Malpractice Act, it is clear a determination as to the constitutionality of the entire act is not required to resolve this matter. It is a well-settled judicial principle courts will not consider constitutional challenges unless such is necessary for resolution of the dispute before it. Benson & Gold Chev. v. La.Motor Veh. Com'n., 403 So.2d 13 (La. 1981). In the posture of the present case, the only provisions properly before the Court for consideration are the provisions requiring submission of a malpractice claim to a medical review panel prior to suit and the provision allowing the panel's opinion to be introduced into evidence. La.R.S. 40:1299.47. We have thoroughly reviewed each of plaintiff's contentions and conclude they are without merit.
The substantive guarantee of due process in our federal and state constitutions requires that a statute bear a rational relationship to a legitimate state interest. Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515 (La.1983). The constitutionality of the medical malpractice act has previously been upheld against due process challenges. Everett v. Goldman, 359 So.2d 1256 (La.1978); Hodge v. Lafayette General Hospital, 399 So.2d 744 (La.App. 3d Cir.1981). We likewise conclude the provisions in question are reasonably related to the legitimate objectives of reducing frivolous claims and encouraging settlements in order to lower malpractice insurance premiums and facilitate continued medical care for citizens at a reasonable cost. See Hodge v. Lafayette General Hospital, supra; see Everett v. Goldman, supra, for full discussion of the objectives of the Medical Malpractice Act. In addition, we find no violation of plaintiff's right to confrontation since La.R.S. 40:1299.47(H) specifically permits her to call as a witness *820 at trial any member of the medical review panel.
Lastly, we consider plaintiff's equal protection claim. The Medical Malpractice Act has also been previously upheld against constitutional attacks on the basis of equal protection. Everett v. Goldman, supra. However, in Sibley v. Bd. of Sup'rs of Louisiana State U., on rehearing, 477 So.2d 1094 (La.1985), the Supreme Court recently articulated a new standard under which equal protection claims under La. Const. of 1974, Art. 1, Sec. 3 must now be analyzed. In speaking of this provision, the Sibley court stated:
"With the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment.
The Declaration of Rights committee of the 1973 Constitutional Convention proposed an article raising the threshold of equal protection by prohibiting discrimination because "of birth, race, age, sex, social origin, physical condition, or political or religious ideas." As explained by the committee spokesman, because the federal courts had failed to afford real or substantial protection by applying the Fourteenth Amendment to legislation based on all of these classifications, the proposed article would require judicial examination when any such classification was challenged and would assign to the State the burden of showing that the classification reasonably furthers a legitimate purpose. A person challenging a legislative classification based on any other grounds would have to show that the law was unreasonable or that it did not further any appropriate state interest. Sibley, at p. 1108. (Footnotes omitted.)
The provisions challenged in the present case classify individuals on the basis of whether or not they were treated by a health care provider who is qualified under the Medical Malpractice Act. Only those victims treated by qualified health care providers must convene a medical review panel prior to filing suit and face the possibility of an adverse opinion being introduced into evidence at trial. This classification is not based upon any of the specific categories enumerated in Art. 1, Sec. 3 such as race, religion, age, sex, etc.[1]. Accordingly, in order to meet the requirement of equal protection under our state constitution, the provisions in question must suitably further an appropriate state interest. Sibley, at p. 1107.
In discussing the objectives of the requirement of a presuit submission of a malpractice claim to a medical review panel, the Everett court stated:
"[T]he requirement that malpractice claims be filtered through a medical review panel ... seems to be a rational effort to accomplish a plausible goal. A panel determination adverse to a malpractice claimant's interest does not preclude his filing a lawsuit. Such a determination would seem to exert subtle pressure on the claimant in a case of little worth to abandon or to settle his claim reasonably, thereby saving the defendant and his insurer the time, expense and worry of apparently needless litigation. And a favorable panel decision will probably aid the claimant in exerting pressure on a defendant to settle the case reasonably, thus treating the malpractice victim to savings in time and expense and to avoidance of possibly risky litigation. In those cases which do go to trial, a plaintiff successful before the panel will benefit from the evidentiary support of the panel's finding and the testimony of the panel members.

*821 In requiring a pre-suit medical review panel the act is not unreasonable; it has no far reaching or especially adverse effect upon the malpractice victim's or health care provider's rights."at p. 1267.
These considerations are also applicable to the provision allowing the admission of the panel's opinion into evidence. By weeding out frivolous claims and encouraging settlements, these provisions should lead to substantial savings in litigation expenses to defendants and their insurers. These savings should logically translate into reductions in malpractice insurance premiums and corresponding reductions in the cost of medical treatment to patients. For these reasons, we conclude the provisions at issue reasonably further the legitimate state interest of encouraging the availability of affordable health care to its citizens and are not constitutionally infirm. This specification of error is without merit.
Costs of this appeal are to be paid by appellant.
AFFIRMED.
LOTTINGER, J., concurs.
NOTES
[1] La.Const. of 1974, Art. 1, Sec. 3 provides as follows:

"No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."