### PERRIN v. RODRIGUEZ et al.*
### No. 14628.

Court of Appeal of Louisiana. Orleans.
March 26, 1934.

Gerald B. Brown, of New Orleans, for appellant.

O'Niell & O'Niell and M. C. Scharff, all of New Orleans, for appellee.

JANVIER, Judge.

Defendant is a dentist practicing his profession in this city. Plaintiff employed him to remove certain defective teeth. This suit has for its object recovery for the damage claimed to have resulted from alleged negligence in removing two of the teeth, it being charged that portions of the roots of the said teeth were allowed to remain in the sockets in the jawbone of plaintiff.

The defense is a denial that any parts of any of the teeth were allowed to remain in plaintiff's mouth.

In the district court there was judgment for plaintiff for $1,335.65. Defendant has appealed.

Originally there were three defendants, E. J. Rodriguez and his two sons, which sons, according to the record, were, at the time of the removal of plaintiff's teeth, practicing dentistry as employees of their father. The judgment was rendered against E. J. Rodriguez alone and, since there has been no appeal by plaintiff, the only defendant with whom we are now concerned is the said E. J. Rodriguez.

*Rehearing denied April 23, 1934.

In this court defendant has filed a plea of prescription of one year contending that since the teeth were removed by defendant during the month of June, 1929, and since this suit was not filed until May 12, 1931, plaintiff's right, if it ever existed, is now barred by the prescription of one year, this being an action ex delicto to which the prescription set forth in article 3536 of the Civil Code is applicable.

■ Although the plea of prescription was not interposed in the trial court, nevertheless, it may, because of article 902 of the Code of Practice be considered and acted upon by us.

■ The facts on which the plea of prescription is based appear in the record, and, when we refer to that record, we note especially that though the alleged negligent act which is said to have caused the damage was committed in June of the year 1929, the fact that that act had caused damage was not known to plaintiff until August, 1930, because it was not until then that he consulted another dentist and was advised that the roots of some of the teeth were still embedded in the sockets of the bone of the jaw.

Usually the prescription which, after the lapse of one year, bars a claim for damage ex delicto, runs from the day on which the damage was sustained—Civil Code, art. 3537—but there is an exception where there was no knowledge of the fact that there was damage or where, through some act of the party who caused the damage, the injured person is kept in ignorance of the fact that there has been damage or of the cause thereof.

The evidence shows that for about fourteen months immediately following the removal by defendant of plaintiff's teeth, defendant continued, at intervals, to attempt to alleviate the pain and to properly fit the plate or denture which he had made for plaintiff, and that, during all of that time, plaintiff was not aware of the fact that the roots were still embedded in his jawbone and were the cause of the pain.

Under such circumstances the prescriptive period did not commence to run until plaintiff discovered that he had sustained injury and that it had resulted from the negligence of defendant. So long as he continued to rely upon the professional advice of defendant, and so long as defendant continued to assure him that the pain was being caused by the denture or false teeth, there was no obligation on his part to commence his suit for redress. He could not sue because he did not know that he had sustained the injury as the result of the negligence of defendant. During that period the course of prescription was suspended. A defendant who either intentionally or unknowingly "succeeds in concealing from a creditor his cause of action cannot be allowed to reap the benefit of his own wrong." (Syllabus No. 3). Hyman v. Hibernia Bank & Trust Company et al., 139 La. 411, 71 So. 598. See, also, Bernstein v. Commercial National Bank, 161 La. 38, 108 So. 117.

In McLaughlin v. Western Union Telegraph Company, 17 F.(2d) 574, 576, the United States Circuit Court of Appeals for the Fifth Circuit, does not express a contrary view on this question. There the employee "knew the facts of his injury and that it was serious and actionable." Though it was held that the fact that he did not know the full extent of the injury did not prevent the running of prescription, the court, recognizing the soundness of the view which was followed in the above-cited cases, used this language:

"It is only when one does not know that he has suffered an actionable injury that the statute is tolled."

Nor can the decision of the Court of Appeal for the Second Circuit in Luke v. Caddo Transfer & Warehouse Company, 11 La. App. 657, 123 So. 444, 124 So. 625, 627, afford any comfort to defendant because there, too, though the court sustained the plea of prescription, it did so because immediately upon the occurrence of the accident which caused the damage the "injuries exhibited a present degree of certainty" and the nature and cause of the accident were well known to the injured party.

In that decision is found approved the following quotation from an opinion of the Court of Cassation in the case of Chemin de Fer du Midi c. Paraire, Journal due Palais, 1877, page 281, from which we again quote:—

" * * * In order that prescription should run, it is not required that the loss should have been already suffered, but only that the fact that it is going to be suffered, or is sure to result, should be sufficiently certain to serve as a basis for a claim of damages in court."

The doctrine that the prescriptive period does not commence until the injured party discovers that he has been damaged is peculiarly applicable to a case such as this where there is such relationship as must exist between a doctor and his patient. It would not do to permit a doctor, who may discover

that he has made a mistake which has caused damage to a patient, to continue to treat the patient, concealing the true condition until the accrual of prescription and to then interpose the plea that the action, based on the mistake, comes too late. Whether the doctor discovers the mistake and intentionally conceals it or negligently fails to discover it, is not important, the important fact being that, through reliance on the doctor's skill and ability, the patient has not discovered that the injury which he has sustained resulted from fault of the doctor.

Here, it does not appear that the concealment was intentionally resorted to, but the result which would be possible should such a plea be sustained shows clearly the fallacy of the reasoning of counsel who seeks to sustain it.

In the case of Colvin et al. v. Warren, 44 Ga. App. 825, 163 S. E. 268, the court recognized the fact that a patient is justified in relying upon his physician's advice and that when he does so the prescriptive period does not commence to accrue until he discovers that he has been misinformed or misled by the physician.

The suit was brought within the year which next followed the discovery by plaintiff of his true condition, which discovery was made when, on the advice of defendant, he consulted an expert in oral surgery. The plea of prescription is overruled.

The record shows that in June, 1929, plaintiff called upon defendant and asked him to undertake the cure of an advanced case of pyorrhea; that defendant advised the removal of ten teeth and the substitution of a denture or set of false teeth; that plaintiff agreed and that defendant removed the said teeth; and that several weeks later the denture was manufactured by defendant and applied.

After about two and one-half months plaintiff, complaining that for some time he had been suffering great pain, called upon defendant, seeking relief. Defendant believing that the denture did not fit properly used a file to remove a small portion of it, thus changing its shape slightly and then, after applying some medicine or drug to alleviate the pain, replaced the denture in plaintiff's mouth.

About two or three months later plaintiff again returned complaining that during that period he had continued to suffer great pain and had been sick in bed most of the time. Again defendant used a file and again the denture was slightly altered in shape and size and again the pain was alleviated with a drug or medicine of some kind. On two later occasions, at intervals of two or three months, plaintiff returned, complaining of continued excruciating pain and, on the last visit, defendant advised him to consult an oral surgeon and recommended, Dr. J. P. Wahl.

This surgeon took skiagraphs of plaintiff's mouth and discovered that three broken roots remained in the sockets of his jawbone and advised that they be immediately removed. Plaintiff consented, the roots were removed, and, we note from the record, the pain has entirely disappeared.

Though counsel for both parties devote much time to a discussion of the law involving the question of the extent of skill which may be required of physicians, surgeons, and dentists, we do not find it necessary to even consider this legal question because, it is conceded that it is negligence for a dentist who removes a tooth to allow any part to remain in the mouth of the patient. Therefore, the only question for us to determine is one of fact, whether or not the roots which were later found in plaintiff's mouth were left there by defendant or had remained after the extraction of other teeth by other dentists many years prior to the operation which was performed by defendant.

The evidence shows that some twenty years earlier certain of plaintiff's teeth had been removed by an oral surgeon in Gretna, La., and that some four or five years after that or about fifteen years ago other teeth were removed by another oral surgeon whose name plaintiff cannot remember.

In the evidence of defendant there is much uncertainty as to which of plaintiff's teeth he removed. Either his memory was bad or he became confused in giving his testimony. At any rate, the circumstances of the case, the fact that the earlier teeth had been removed so long prior to the operation which was performed by defendant, and that no pain had manifested itself during that intervening period, the fact that the pain immediately followed the removal of the teeth by defendant, and the testimony of plaintiff and his wife that the roots which were found were roots of the teeth which had been removed by defendant, amply support the conclusion which was reached by our brother below that it was negligence on the part of defendant which caused the damage which plaintiff complains of. Certainly it cannot be said that the finding on this point was manifestly erroneous.

558

For some fourteen months plaintiff continued to suffer excruciating pain. During that time he relied solely on the expert advice of defendant. He consulted no other dentist or oral surgeon. He is an electrical contractor and found it necessary to turn over to other contractors several "jobs" which were offered him, and, instead of himself making the money which would have resulted from the carrying out of those contracts, he was required to pay out to those to whom he turned over the work almost $300. He is entitled to such amount as he thus lost and also to the expenses to which he was put. The proof on these items warrants the award which was made.

In view of the continued suffering of plaintiff for nearly fourteen months, we do not believe that the $1,000 award on this item can be said to be excessive.

The judgment appealed from is affirmed.

Affirmed.