169 So.2d 171 (1964)
Frederick J. SPRINGER
v.
AETNA CASUALTY AND SURETY COMPANY.
No. 1540.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1964.
*172 Dodd, Hirsch, Barker & Meunier, Harold J. Lamy, New Orleans, for plaintiff, appellant.
Adams & Reese, Henry B. Alsobrook, Jr., New Orleans, for defendant, appellee.
Before REGAN, SAMUEL and TURNER, JJ.
REGAN, Judge.
Plaintiff, Frederick J. Springer, instituted this suit against the defendant, Aetna Casualty and Surety Company, endeavoring to recover damages in the amount of $5,500.00 for additional pain, suffering, and disability incurred as the result of the alleged negligence on the part of the defendant's insured, Dr. Melvin M. Rosenthal, in failing to properly diagnose and treat an initial injury to his hand.
Defendant answered and denied the accusations of negligence on behalf of its insured and subsequently filed a motion for summary judgment and also an exception predicated on the liberative prescription of one year contained in Art. 3536 of the LSA-Civil Code.[1]
After a hearing, the lower court refused to render a summary judgment; however, the judge thereof sustained the defendant's exception of prescription of one year and dismissed the plaintiff's suit. From that judgment he has prosecuted this appeal.
The record reveals that on May 21, 1962, the plaintiff sustained an injury to the third and fourth fingers of his right hand in the course of his employment with the American Can Company. Plaintiff was afforded emergency treatment in a local hospital and then was referred by his employer to Dr. Rosenthal, who did not X-ray plaintiff's hand, but instead treated it under the assumption that no fracture had been sustained.
Plaintiff repeatedly complained of the existence of pain, and after several requests that an X-ray be taken, Dr. Rosenthal finally capitulated. In the month of September, 1962, X-rays were taken. They revealed that he had incurred a fracture of the ring finger of his right hand. Dr. Rosenthal then associated Dr. James Le Noir, an orthopedic specialist, who performed an operation on his finger on October 26, 1962. Plaintiff remained under Dr. Le Noir's care, and on November 13, 1962, he was permitted to return to work. On or about the same date, plaintiff visited the office of Dr. Rosenthal in order to obtain a certificate of fitness for the benefit of his employer.
Suit was filed by the plaintiff on November 7, 1963. He based his claim on the fact that Dr. Rosenthal omitted to take timely X-rays of his fingers, thereby causing him additional pain, suffering, and disability. On the other hand, the defendant insists that the plaintiff's cause of action has prescribed since the suit was filed on his behalf more than one year from the date he acquired knowledge of Dr. Rosenthal's alleged negligence.
*173 Plaintiff concedes the validity of the foregoing facts; however, he asserts that prescription did not begin to run against his cause of action until he was discharged from treatment by both physicians. He rationalizes that since he had no voice in the selection of an orthopedic surgeon, Dr. Le Noir was an "ally and associate" of Dr. Rosenthal, so that the inception of prescription did not occur until November 12, 1962, when plaintiff was released by Dr. Le Noir as fit to resume his former occupation. Plaintiff emphatically points out that Dr. Rosenthal also examined him on November 12, 1962, to certify his fitness, and he argues that this is evidence of the continuance of Dr. Rosenthal's status as treating physician until this date.
In support of his contentions, plaintiff relies on the so-called "continuous treatment" doctrine, which provides that the statute of limitations in tort actions against physicians does not begin to run until the termination of treatment or until the physician-patient relationship has ended.[2] This doctrine has been adopted by several of our sister states predicated on the hypothesis that the integrity of a harmonious physician-patient relationship is socially valuable;[3] however, there exists no authority, precedent, or guide for its application in this jurisdiction. On the contrary, it is well settled in Louisiana that liberative prescription for tortious conduct by physicians does not begin to run until the patient discovers or reasonably should have discovered his injury. In Perrin v. Rodriguez,[4] the court reasoned that while the one year prescription which generally applies to a claim for damages ex delicto runs from the day on which the damage was sustained, an exception thereto exists where there is no knowledge of the damage or where the injured party, through some act of the tort-feasor, is kept in ignorance of the damage or cause thereof. Under these circumstances, prescription does not begin to run until the patient's discovery of the injury. The foregoing rationale is consistent with the rules applicable to other types of tort actions in Louisiana, and its applicability in this case, in our opinion, cannot be successfully challenged.
Therefore, we are compelled to reach the inevitable conclusion that since the plaintiff actually learned of the negligence of Dr. Rosenthal during the month of September, 1962, and since suit was not filed on his behalf until November 7, 1963, any cause of action he may have had against the defendant is vitiated by virtue of the prescription of one year.
For the foregoing reasons, the judgment of the lower court is affirmed, and all costs incurred in connection with this litigation are to be paid by the plaintiff.
Affirmed.
NOTES
[1] This article reads:

"The following actions are also prescribed by one year: That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses."
* * * * *
[2] See 74 A.L.R. 1317, 1322; 114 A.L.R. 227; 80 A.L.R.2d 368, 384; 47 Cornell L.Q. 339.
[3] See Williams v. Elias, 140 Neb. 656, 1 N.W.2d 121 (1941).
[4] 153 So. 555 (1934).