**Abraham R. DERRYBERRY, Jr.**

v.

**Dr. Bernard C. HOLLIER, Jr.**

**Civ. A. No. 14454.**

United States District Court,
W. D. Louisiana,
Alexandria Division.

Dec. 1, 1971.

Michael T. Gallagher, Houston, Tex., for plaintiff.

DeWitt T. Methvin, Jr., Alexandria, La., for defendant.

NAUMAN S. SCOTT, District Judge:

Abraham R. Derryberry, Jr. brought this action against the defendant, Dr. Bernard C. Hollier, Jr., seeking to recover damages for injuries suffered as a result of the allegedly negligent performance of an operation for correction of the condition known as tic douloureux. The operation was performed on March 15, 1967. Suit was filed almost two years later on February 17, 1969. Defendant has filed a plea on grounds that plaintiff's alleged cause of action had prescribed.

For purposes of the trial of the plea of prescription, the parties have stipulated as follows:

"1. On March 15, 1967, defendant performed surgery upon plaintiff, Abraham R. Derryberry, Jr., as shown on the annexed operative report.[1]

2. On March 28, 1967 at the request of the plaintiff, plaintiff was furnished with a copy of the operative report as attached hereto.

3. On April 12, 1967 plaintiff wrote to defendant a letter dated April 12, 1967 a copy of which is annexed hereto, marked Exhibit B.[2]

4. In mid-April of 1967, the plaintiff consulted Dr. C. L. Leach, a doctor in Houston, Texas, complaining of a festered incision in the right cheek.

5. In May of 1967, while the plaintiff was in Oman Muscat working on a Construction job sutures came out through the flesh of his gums and were removed by tweezers.[3]

6. In June, 1967, plaintiff left Oman Muscat complaining of pain in the eye and a burning in his face.

7. On August 31, 1967, plaintiff was operated on by Dr. Robert J. Goodall, who performed a retro-gasserian resection of the sensory root of the right trigeminal nerve.

8. Prior to the surgery which was performed by Dr. Goodall on August 31st, plaintiff was seen by Dr. Hunter Harang, oral surgeon of Houston, Texas, who pulled a small bone sliver out of his gums and advised him that he had a little infection in the gums.

9. In December of 1967, plaintiff applied for employment with Brown and Root Construction Company and after passing the physical examination went to work in their employment, even though he was still complaining of pain and infection in the area of the gums.

10. On January 13, 1968, plaintiff consulted a dentist, Dr. A. E. Thomas, for extraction of four teeth and the roots of the teeth had turned black and there was pus under one of the fillings."

Article 3536 of the Civil Code of Louisiana (1870) provides:

"The following actions are also prescribed by one year: That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses.

That which a possessor may institute, to have himself maintained or restored to his possession, when he has been disturbed or evicted.

That for the delivery of merchandise or other effects, shipped on board any kind of vessels.

That for damage sustained by merchandise on board ships, or which may

---

1. The operative report states that the operation consisted of an avulsion of the infra-orbital portion of the second division of the right fifth cranial nerve and avulsion of the mental portion of the third division of the right cranial nerve. The report then details the specific procedures followed in the course of the operation.

2. This letter contains a request for the post-operative report, a statement to the effect that the plaintiff was still suffering substantial pain of the type he had previously sustained and a statement informing the defendant that he intended to visit a doctor in Houston in the near future for treatment of the condition.

3. Plaintiff worked as a master mechanic in Oman Muscat, South Arabia, for fifty-nine days immediately following the performance of the surgery by the defendant.

have happened by ships running foul of each other."

Article 3537 then provides:

"The prescription mentioned in the preceding article runs:

With respect to the merchandise injured or not delivered, from the day of the arrival of the vessel, or that on which she ought to have arrived.

And in the other cases from that on which the injurious words, disturbance or damage were sustained.

And where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof."

The plaintiff contends that the doctrine "contra non valentem agere nulla currit praescriptio" is applicable in this matter, the principle being that prescription does not run against one who could not bring his suit. The application of this doctrine in certain limited situations has been recognized by the Louisiana Jurisprudence. Cartwright v. Chrysler Corporation et al., 255 La. 597, 232 So.2d 285 (1970); Martin v. Mud Supply Co., 239 La. 616, 119 So.2d 484 (1960); Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409 (1951); Smith v. Tyson, 193 La. 571, 192 So. 61 (1939); McGuire v. Monroe Scrap Material Co., 189 La. 573, 180 So. 413 (1938); Hyman v. Hibernia Bank and Trust Co., 139 La. 411, 71 So. 598 (1916); Succession of Farmer, 32 La. Ann. 1037 (1880). The basis for the plaintiff's contention is that the facts do not show that the plaintiff was aware of, or possessed knowledge of, the alleged causal condition between the acts of the defendant and the condition of the plaintiff during the period of one year prior to the filing of the suit.

As a general rule the burden of proof rests upon a defendant pleading prescription as an affirmative defense. Succession of Thompson, 191 La. 480, 186 So. 1 (1938); Foster v. McLain, 198 So.2d 463 (La.App. 3 Cir. 1967); Ludlam v. International Paper Company, 139 So.2d 67 (La.App. 2 Cir. 1962). However, where the petition of the plaintiff, on its face, shows that the cause of action has prescribed, as in the instant matter, the plaintiff must allege and prove facts sufficient to show a suspension or interruption of prescription sufficient to bring the action within the prescriptive period. Kennard v. Yazoo and Missouri Valley Railway Co., 190 So. 188 (La.App. 1 Cir. 1939); Lucas v. Commercial Union Insurance Co., 198 So.2d 560 (La.App. 1 Cir. 1967); Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d 565 (La.App. 1 Cir. 1970). The question is, therefore, whether the facts contained in the stipulation, considered in light of the Louisiana Jurisprudence governing the doctrine, sustain the burden of proof required of the plaintiff.

The development of the doctrine granting the exception to the running of prescription is most interesting. In the case of Perrin v. Rodriguez, 153 So. 555 (La.App. Orleans Cir. 1934), the Court stated:

"Usually the prescription which, after the lapse of one year, bars a claim for damage ex delicto, runs from the day on which the damage was sustained—Civil Code, art. 3537—but *there is an exception where there was no knowledge of the fact that there was damage or where, through some act of the party who caused the damage, the injured person is kept in ignorance of the fact that there has been damage or of the cause thereof.*

The evidence shows that for about fourteen months immediately following the removal by defendant of plaintiff's teeth, defendant continued, at intervals, to attempt to alleviate the pain and to properly fit the plate or denture which he had made for plaintiff, and that, during all of that time, plaintiff was not aware of the fact that the roots were still embedded in his jawbone and were the cause of the pain.

Under such circumstances the prescriptive period did not commence to run until plaintiff discovered that he had sustained injury and that it had resulted from the negligence of defendant. So long as he continued to rely upon the professional advice of defendant, and so long as defendant continued to assure him that the pain was being caused by the denture or false teeth, there was no obligation on his part to commence his suit for redress. He could not sue because he did not know that he had sustained the injury as the result of the negligence of defendant. During that period the course of prescription was suspended. A defendant who either intentionally or unknowingly 'succeeds in concealing from a creditor his cause of action cannot be allowed to reap the benefit of his own wrong!' (Syllabus No. 3). Hyman v. Hibernia Bank & Trust Company et al., 139 La. 411, 71 So. 598. See, also, Bernstein v. Commercial National Bank, 161 La. 38, 108 So. 117." (Emphasis added).

There are, of course, obvious factual distinctions between the *Perrin* case and the instant one. Derryberry did not continue under the care of Dr. Hollier, as *Perrin* did under the care of Dr. Rodriguez, and there could be no contention in this case that the damage was concealed from the plaintiff, intentionally or otherwise. However, the *Perrin* case is important in that it announces the principle emphasized in the quotation.

In the case of Springer v. Aetna Casualty and Surety Co., 169 So.2d 171 (La.App. 4 Cir. 1964), the same Fourth Circuit Court of Appeal stated the rule as follows:

" * * * it is well settled in Louisiana that liberative prescription for tortious conduct by physicians does not begin to run until the patient discovers *or reasonably should have discovered his injury.*" (Emphasis added).

The *Springer* case was decided on the basis that the plaintiff had actual knowledge of the negligence of the defendant more than one year prior to the filing of the lawsuit, following the decision in *Perrin*. The Court appears to have recognized, however, by way of obiter dictum, that "constructive notice" may be sufficient to commence the running of prescription. The rule of constructive notice had been previously recognized in cases involving the running of prescription with regard to trespass actions. Schouest v. Texas Crude Oil Co., 141 So.2d 155 (La.App. 1 Cir. 1962) and cases cited therein. This is the first indication that it might be held applicable in cases involving knowledge of medical facts by the plaintiff.

The Supreme Court of Louisiana extended the rule of constructive notice beyond actions involving trespass to immovable property in Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970). In that case the plaintiff filed suit against the driver of the automobile which struck her automobile in the rear. This suit was dismissed by the District Court which upheld the defense that the accident was caused by brake failure and not by the negligence of the defendant. The plaintiff then brought action against the manufacturer, more than one year after the date of the accident. The plaintiff admitted in a discovery deposition that she was told by the driver of the other vehicle, at the scene of the accident, that the accident was due to brake failure and additionally that she heard him tell the investigating officer of the manner in which the accident happened. In holding that the suit was barred by prescription, the Court stated:

"The rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, applies only when such ignorance is not wilful and does not result from negligence,[4] and

4. See, Walter v. Caffall, 192 La. 447, 188 So. 137.

the doctrine has been limited to cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder,

impede or prevent the creditor from ascertaining knowledge of the existence of the debt. See, Ayres v. New York Life Ins. Co., supra. Also, it is not necessary that the party have actual knowledge of the conditions as long as there is 'constructive notice.' Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.[5]

5. Young v. International Paper Co., 179 La. 803, 155 So. 231; National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234."

This rule was extended to include constructive notice of facts of a medical nature in Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d 565 (1 Cir. 1970). After citing *Cartwright,* the Court stated:

"The medical testimony of record does establish that the doctors who treated Mrs. Hunter doubted seriously that the manner in which she was placed in bed had anything to do with her complaints. From the beginning, however, plaintiff was fully aware of her injuries and attributed them to action on defendant's part of which she had knowledge. In this regard Dr. Brown testified that plaintiff attributed her injuries to a fall and the manner in which she was placed back in bed. Dr. Norris' testimony was that plaintiff dwelled on the manner in which she was placed in bed and assigned this event as the cause of her suffering. Mrs. Hunter had knowledge from the beginning both of the nature of her injuries and the express action of defendant to which she attributed her condition.

We find the above circumstances were sufficient to excite plaintiff's attention, put her on guard and call for an inquiry. Consequently plaintiff is charged with knowledge of all that diligent inquiry may have revealed."

Despite the plaintiff's lack of actual knowledge concerning the cause of her injuries, the Court held that prescription had run.

This Court has before it the joint stipulation of counsel for the plaintiff and the defendant. It is to determine whether the facts contained therein sustain the burden of proof required of the plaintiff; that is, whether the facts indicate a lack of actual knowledge or a lack of constructive notice of the alleged negligent acts. The stipulated facts such as the festered incision in the right cheek in April 1967 (within a month of the operation); the sutures coming out of his gums in May 1967; the pain in his eye and burning in his face in June 1967; the "retro-gasserian re-section of the sensory root of the right trigeminal nerve" on August 31, 1967; the infection in his gums and the removal of a small bone sliver from his gums prior to August 31, 1967; and the infection and extraction of four teeth with black roots on January 13, 1968, certainly were sufficient to put plaintiff on his guard and to call for inquiry. In the face of these facts plaintiff cannot sustain the position that he lacked actual knowledge or constructive notice of his alleged cause of action prior to February 17, 1968. Plaintiff clearly has not sustained his burden of proving an interruption or suspension of the prescription running against his cause of action. His claim has prescribed.

Accordingly, summary judgment in favor of defendant, Dr. Bernard C. Hollier, Jr., and against plaintiff, Abraham R. Derryberry, Jr., is granted in accordance with Federal Rules of Civil Procedure 12(b) and 56, dismissing plaintiff's suit at his cost.