364 So.2d 248 (1978)
Wilmore J. LAMBERT, Plaintiff-Appellant,
v.
Dr. Richard Roy MICHEL et al., Defendants-Appellees.
No. 6647.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1978.
Rehearing Denied November 28, 1978.
Writ Refused January 26, 1979.
*249 Robert W. Stratton, Baker, for plaintiff-appellant.
Provosty & Sadler by LeDoux R. Provosty, Jr., Alexandria, for defendants-appellees.
Before WATSON, GUIDRY and FORET, JJ.
WATSON, Judge.
Wilmore J. Lambert's suit against Dr. Richard R. Michel and his malpractice insurer, St. Paul Fire and Marine Insurance Company, claimed damages for the death of Lambert's wife, Beatrice. A jury decided in favor of the defendants, Dr. Michel and St. Paul, and against plaintiff, Lambert.
The first issue presented is whether plaintiff's cause of action has prescribed.
PRESCRIPTION
Defendants have filed an exception of prescription in this court, contending that the suit is barred by the provisions of LSA-R.S. 9:5628.[1]
*250 Dr. Michel last treated Mrs. Lambert on April 3, 1975. Mr. and Mrs. Lambert had knowledge of Mrs. Lambert's cancerous condition on October 22, 1975. Mrs. Lambert died on July 14, 1976, of cancer of the cervix. Her cause of action had not prescribed at that time. The instant suit was filed on November 4, 1976, less than one year after Mrs. Lambert's death. Ordinarily, a statutorily designated survivor may bring suit, both for a decedent's surviving right to recover and for the wrongful death, within "a period of one year from the death of the deceased." LSA-C.C. art. 2315 (quoted at footnote 4 infra); J. Wilton Jones Co. v. Liberty Mutual Insurance Co., 248 So.2d 878 (La.App. 4 Cir. 1971), writ denied, 259 La. 61, 249 So.2d 202 (1971); Carter v. Mule, 346 So.2d 882 (La.App. 4 Cir. 1977).
In some circumstances, the statute's application might result in a denial of an adequate remedy at law for injury in violation of LSA-Const. Art. 1, § 22.[2] For example, if the malpractice victim died the day before the year expired without filing suit, LSA-R.S. 9:5628 would allow only one day for the survivor to file suit. It is difficult to believe that the legislature intended such a result. However, it is not necessary to consider the constitutional issue in the present case. Moreover, the Louisiana Supreme Court has stated in Everett v. Goldman, 359 So.2d 1256 (La.1978) that: "The right of malpractice claimants to sue for damages caused them by medical professionals does not involve a fundamental constitutional right." 359 So.2d 1268. Compare Foster v. Hampton, 352 So.2d 197 (La.1977).
Attorney for plaintiff contends that the last treatment by Dr. Michel on April 3, 1975, occurred prior to the effective date of the statute, September 12, 1975, and LSA-R.S. 9:5628 is therefore inapplicable. The Louisiana Supreme Court, in Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331 (La.1978), held LSA-R.S. 9:2794, also a malpractice statute, to be interpretive and procedural legislation which should be given retrospective effect, but that court has not yet considered LSA-R.S. 9:5628. Henson v. St. Paul Fire & Marine Ins. Co., 354 So.2d 612 (La.App. 1 Cir. 1978) writ granted March 31, 1978, followed a proportionate method in applying the statute, reckoning the period preceding the change under the old law and that following under the new. In the instant situation, it is unnecessary to decide whether LSA-R.S. 9:5628 should be given retrospective effect. The alleged tort did not consist of the treatment rendered by Dr. Michel but his omission to perform certain diagnostic tests, particularly a Pap smear, which would have revealed Mrs. Lambert's cancerous condition. LSA-C.C. art. 2316.[3] only when Mrs. Lambert's cancer was discovered by another doctor on October 22, 1975, were the Lamberts aware an injury had been sustained. This was after the effective date of LSA-R.S. 9:5628, which is therefore controlling, if applicable.
The Lamberts became aware of the cancerous condition on October 22, 1975, and the record indicates they then discovered that the cancer might have been detected earlier but for Dr. Michel's act, omission or neglect. Perrin v. Rodriguez, 153 So. 555 *251 (La.App.orl.1934); Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d 565 (La.App. 1 Cir. 1970).
LSA-R.S. 9:5628, provides for a one year prescriptive period on an action for "damages for injury or death" because of medical malpractice. The statute is curiously silent on the inheritance of a cause of action for death (what is commonly referred to as the survival action) and the cause of action for wrongful death. LSA-R.S. 9:5628, because it makes no specific provisions for wrongful death actions and the survival action, must be considered a general statute. It conflicts with the provisions of LSA-C.C. art. 2315,[4] which following an announcement of the general theory of negligence law in Louisiana, makes special provision for inheritance of a right to recover damages, provides a one year prescriptive period following the death of the deceased, and carefully enumerates those persons who inherit the cause of action. There is also a provision for the right to recover for the wrongful death.
Article 2315, especially paragraphs two and three, is a special statute relating to actions arising from the death of tort victims. The rule is that where there is an apparent conflict between general laws and special laws on the same topic the special law prevails, even though the general law may have been enacted at a later date; the special law is not repealed by implication and is only affected if the intent to repeal cannot be doubted. Hewitt v. Webster, 118 So.2d 688 (La.App. 2 Cir. 1960).
Therefore, the prescriptive period applicable to Lambert's claim for the death of his wife is as provided by Article 2315 and not LSA-R.S. 9:5628. Lambert was entitled to file suit for one year following her death provided that her cause of action had not prescribed at the time of her death. It had not.
The exception of prescription is overruled.
OTHER ISSUES
The other issues presented by plaintiff's appeal, as reflected by the record and the contentions of the parties, are as follows: whether the jury erred manifestly in holding that Dr. Michel was not guilty of negligence which was a legal cause of Mrs. Lambert's death; whether the trial judge erred in failing to give certain instructions requested by plaintiff; whether there was error in receiving testimony from Dr. Michel concerning a medical meeting at Marksville General Hospital relative to a Federal study; and whether the trial judge erred in allowing certain questions by defendants' counsel.
ON THE MERITS
Dr. Michel treated Mrs. Lambert from April of 1972, until April of 1975, for *252 various acute problems. During this period of time, Mrs. Lambert did not present any symptoms relating to her female organs, and Dr. Michel did not treat her for any medical problems connected with the cause of her death. Mrs. Lambert was admitted to the Marksville General Hospital on four occasions during 1974 and 1975. She was admitted on March 4, 1974, and discharged on March 10, 1974, with complaints of coughing, shortness of breath, bronchitis, and fever. During this first visit to the hospital, Dr. Michel examined Mrs. Lambert relative to these complaints. Mrs. Lambert's three subsequent admissions by Dr. Michel to the Marksville General Hospital on July 27, 1974, August 6, 1974, and March 31, 1975, were all of short duration. She was discharged from the hospital on April 3, 1975, and this was the last time she was under Dr. Michel's care. Mrs. Lambert's chief complaint on these admissions was diarrhea and associated pain in the abdomen.
On or about October 19, 1975, Mrs. Lambert began to hemorrhage from her vagina. On October 22, 1975, Mrs. Lambert was examined by Dr. Vincent, a gynecologist, who diagnosed Mrs. Lambert's condition as stage 3 carcinoma of the cervix. (Stage 3 is a relatively advanced stage.) Mrs. Lambert was referred to a radiation treatment center at Woman's Hospital in Baton Rouge in an attempt to save her life. These radiation treatments, subsequent surgery, and chemotherapy were unsuccessful and Mrs. Lambert died on July 14, 1976.
Defendants' expert witnesses (Dr. F. P. Bordelon, Jr., Dr. Edwin John Califey, Dr. Bryan Clark McCann and Dr. Samuel R. Abramson), all, like defendant, general practitioners in the Marksville-Avoyelles Parish community, unanimously testified that, when a woman presents herself in their offices or is hospitalized for a complaint unrelated to her female organs, they do not perform pelvic examinations or pap smears. Furthermore, under such circumstances, they elicit from their patients only the medical history necessary to treat the specific complaint. The jury could reasonably conclude that Dr. Michel's treatment of Mrs. Lambert did not fall below the community standard. There is no evidence that the community standard followed by general practitioners in the Marksville-Avoyelles Parish community is faulty or contrary to teachings in medical colleges.
Therefore, there is no manifest error in the jury's decision in favor of Dr. Michel and St. Paul and against the plaintiff.
SPECIAL INSTRUCTIONS
The special instructions which the trial judge declined to give the jury were as follows:
1. "Expert evidence is not required where the results of the treatment are of such character as to warrant the inference of want of care from the testimony of the laymen, or in the light of the knowledge and experience of the jurors. It is not necessary that expert testimony showing improper treatment be specific and positive." (TR. 351)
2. "A doctor may not be allowed to take refuge in the fact that others in the same profession would have done the same as a defendant doctor did. If you determine among yourselves that the plaintiff was entitled to better treatment or a higher standard of care than exists in the community, notwithstanding the medical testimony as to the local standard of care, you may find negligence by the defendant if you find there is negligence so obvious that it would be within the comprehension of a layman's common knowledge or experience." (TR. 352)
The trial judge did not err in declining to give the two requested instructions. In the general instructions, the trial court charged the jury that the defendant physician was required to exercise the degree of care and skill ordinarily employed under similar circumstances by physicians in good standing in the community (TR. 343). Also, the jury was charged that the defendant was required to use reasonable *253 care and diligence along with his best judgment in caring for the deceased (TR. 344). The language used by the trial court in the various charges is in accord with LSA-R.S. 9:2794.
The question presented here was whether the physician had failed to follow proper medical procedures and not whether he was negligent in some fashion which might be appreciated by a layman. The instructions requested by plaintiff were appropriate only if the jury were called upon to decide a question of negligence within the purview of a layman's knowledge and were unwarranted under the facts of the instant case. The instructions given by the trial court adequately reflect the law on the issues presented.
TESTIMONY CONCERNING FEDERAL STUDY
Appellant's specification of error number three deals with Dr. Michel's testimony concerning the Marksville General Hospital and a Federal study, which purportedly found that no pap smears or pelvic examinations were done in 1977 for patients with upper respiratory infections. Appellant objected to Dr. Michel's qualifications to give the testimony. There was no error in the ruling that the doctor was qualified.
HYPOTHETICAL QUESTIONS
Specifications of error number four and five deal with two series of hypothetical questions proposed to expert witnesses. Plaintiff's objection was to questions (Tr. 154 and 177) by defendant's counsel as to whether the expert witness being interrogated would perform a pelvic examination or a pap smear on female patients involved in automobile accidents or having a variety of diseases. It is correct that hypothetical questions should not be based on unproved facts. Brown v. Aetna Casualty & Surety Company, 96 So.2d 357 (La. App. 1 Cir. 1967). But the questions posed here did not purport to be based on the facts of Mrs. Lambert's situation; they pertained to the general subject of pelvic examinations. A principal issue of the litigation involved the circumstances in which a pelvic examination or a pap smear is appropriate. The hypothetical questions were relevant to a material issue. Expert testimony, not unreasonably prolonged, which illuminates the general area of inquiry for the jury may be permitted. There was no error in allowing these questions.
For the reasons assigned, the judgment below is affirmed at appellant's costs.
AFFIRMED.
GUIDRY, J., concurs and assigns written reasons.
GUIDRY, Judge, concurring.
I concur in the result. In my view plaintiff's cause of action for the death of his wife has prescribed under the provisions of LSA-R.S. 9:5628. Although the cited statute does not specifically recognize inheritance of a right to recover damages for death, it impliedly recognizes the existence of such right when it allows damages for "injury or death". I agree with the opinion author that the provisions of LSA-C.C. Article 2315 allowing inheritance of a right to recover damages for death and/or wrongful death in medical malpractice actions were not repealed by LSA-R.S. 9:5628, however, I cannot agree that the prescriptive period applicable to such actions, as provided by LSA-C.C. Article 2315, insofar as medical malpractice actions are concerned, was not superseded by LSA-R.S. 9:5628. The latter statute very specifically provides that "No action for damages for injury or death against any physician, . . . whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of . . . discovery of the alleged act, omission or neglect. . .". In the instant case, as correctly found by the opinion author, plaintiff and his deceased wife became aware of her condition and Dr. Michel's alleged act of omission or neglect on October 22, 1975. The instant suit was not filed until November 4, 1976. Under such circumstances, in my opinion, plaintiff's suit was filed too late *254 and should have been dismissed on appellee's plea of prescription.
NOTES
[1] LSA-R.S. 9:5628: "Actions for medical malpractice"

"A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
"Section 2. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable."
[2] LSA-Const. Art. 1, § 22: "Access to Courts"

"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation or other rights."
[3] LSA-C.C. art. 2316: "Negligence, imprudence or want of skill"

"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
[4] LSA-C.C. art. 2315: "Liability for acts causing damage; survival of action"

Art. 2315. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.
The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.
As used in this article, the words "child", "brother", "sister", "father", and "mother" include a child, brother, sister, father, and mother, by adoption, respectively. (Amended by Acts 1948, No. 333, § 1; Acts 1960, No. 30, § 1.)