545 So.2d 1267 (1989)
Judith E. DUNN, et al., Plaintiffs,
v.
NORTH COMMUNITY HOSPITAL, et al., Defendants.
No. 20819-CW.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1989.
*1268 James R. Dawson, Shreveport, for plaintiffs.
McLeod, Swearingen, Verlander, Dollar, Price & Noah by David E. Verlander, III, Monroe, for North Community Hospital, et al., defendant.
Theus, Grisham, Davis & Leigh by Ronald L. Davis, Jr., Monroe, for Dr. Edward Worley, defendant.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
Upon the application of all parties to the litigation, we granted a writ in this case to consider whether the trial judge erred in overruling exceptions of prescription directed at the suit filed by the widow and children of a deceased cancer patient whose death was allegedly caused by the medical malpractice of the defendants.
It was alleged that:
On January 30, 1987, Clarence Dunn went to North Monroe Community Hospital with complaints of chest pains. He was x-rayed, and the x-rays later were read by Doctor Worley who found no showing of cancer. Dunn was subsequently discharged.
Between May 11 and May 16, 1987, Dunn was seen by physicians at St. Francis Medical Center. At that time, he again was x-rayed, and was diagnosed as having lung cancer. The new physicians told Dunn and his family that the cancer was discernible on the original x-rays taken at North Monroe Community Hospital.
The plaintiffs acknowledge in their petition that in May of 1987 both they and Dunn had notice of the potential medical negligence claim. They considered filing a suit at that time, but Dunn was opposed to filing suit. Dunn died on March 31, 1988 and this suit was filed on October 20, 1988. The petition was met by several exceptions including exceptions of prescription. The exceptions of prescription were subsequently overruled by the trial court, and all parties sought writs of review.
Defendants contend that prescription in this case is controlled by La.R.S. 9:5628 under which plaintiffs' claims have prescribed. (On the other hand, plaintiffs contend that in the case of a wrongful death or survival action under La.R.S. 9:5628, prescription begins running with the date of death because prior to that time, the survivors have no right to assert a claim.) Plaintiffs argue that the doctrine of contra non valentem requires this result. Alternatively, plaintiffs argue that in a wrongful death or survival action. La.C.C. Articles. 2315.1 and 2315.2, as special statutes, should control in preference to 9:5628, a general statute.
All parties note the unsettled and uncertain state of the law as it relates to this specific issue. They point out that the courts of appeal are in conflict, the state supreme court has not resolved the conflicts, and this particular issue has not been addressed by any decision reported to date.
La.R.S. 9:5628 provides in pertinent part:
A. No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
The various aspects of the problem of calculating prescription under the above quoted statute are considered in the cases of Gover v. Bridges, 486 So.2d 1117 (La. *1269 App.2d Cir.1986), affirmed, 497 So.2d 1364 (La.1986) and Minor v. Casten, 521 So.2d 465 (La.App. 4th Cir.1988).
In Gover, plaintiffs brought suit against the defendant doctor approximately nine years after the death of the patient, and the doctor filed an exception of prescription based on 9:5628. Plaintiffs argued that a letter from the defendant following the patient's death misrepresented the facts to plaintiffs, and that as a result they were unable to bring their claim at an earlier date. They argued that due to this misrepresentation, the doctrine of contra non valentem suspended the running of prescription. They also contended that 9:5628 was unconstitutional, and that it did not apply to wrongful death claims.
This court then noted that in Lambert v. Michel, 364 So.2d 248 (La.App.3d Cir.1978), writ denied, 366 So.2d 917 (La.1978), the appellate court had held that La.C.C. Article 2315 applied to a wrongful death claim allegedly caused by medical malpractice because 9:5628 did not specifically provide for wrongful death claims and therefore was a general statute, while Article 2315 did specifically deal with wrongful death claims and was more specific. The court in Lambert then applied the rule that in cases of conflict between general laws and special laws on the same topic, the special law prevails. However, this court disagreed with the reasoning in Lambert and also with the same reasoning as it was employed in Giroir v. South Louisiana Medical Center, 453 So.2d 949 (La.App. 1st Cir. 1984), writ granted on other grounds, 458 So.2d 108 and 109. We specifically stated that the language of the statute is broad enough to include not only actions for personal injury due to malpractice, but also survival and wrongful death claims.
Turning to the question of contra non valentem, we noted that the doctrine was recognized in Corsey v. State Department of Corrections, 375 So.2d 1319 (La.1979) where it was held that prescription would not run where 1) some legal cause prevents the courts or their officers from taking cognizance of or acting on the plaintiff's actions, 2) a condition is coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting, 3) the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action, 4) the cause of action is not known or reasonably known by the plaintiff even though his ignorance is not induced by the defendant. This court further noted that in Chaney v. State Department of Health, 432 So.2d 256 (La.1983), where the plaintiffs fall under category four of contra non valentem, the court found that the doctrine of contra non valentem did not apply, and ruled the plaintiffs' claim was barred by the time limits of 9:5628. However, no decision was made as to whether 9:5628 overruled the other three categories of contra non valentem.
In Gover, supra, this court then held that under the facts of the case it was not necessary to determine whether 9:5628 legislatively overruled the entire doctrine of contra non valentem. Rather, we agreed with the trial court that if the doctrine should apply, the plaintiffs failed to show the requisite fraud, misrepresentation, or ill practices necessary to prevent them from asserting their claim and preventing the running of prescription. Additionally, it was held that 9:5628 was not unconstitutional.
Thus, Gover, supra, stands for the proposition that 9:5628, rather than Article 2315, governs survival and wrongful death claims arising from alleged malpractice. Gover also indicates that while 9:5628 specifically overruled the fourth category of contra non valentem, the doctrine may well not have been overruled in its entirety. Also see Whitnell v. Menville, 540 So.2d 304 (La.1989).
In Minor, supra, the 4th Circuit Court of Appeal agreed with our holding in Gover that 9:5628 applied to survival and wrongful death claims due to alleged malpractice. Furthermore, the facts in Minor are analogous to those of the instant case. Beginning in November 1981, Doctor Casten, a dentist, advised O.J. Minor to spray Chloroseptic on a lesion on the roof of his mouth. Dr. Casten never referred Minor to a specialist, *1270 nor did he treat the lesion as a possible cancer. On or about November 15, 1982, an oral surgeon biopsied Minor's mouth and diagnosed squamous cell carcinoma. After treatment consisting of surgery and radiotherapy, Minor died on September 19, 1983. On September 19, 1984, Mrs. Minor and the children filed wrongful death and survival actions against Dr. Casten and his insurer. The suit was filed more than a year after the alleged act of omission and more than a year after Minor and his family had notice of the problem. However, the suit was filed within one year of Minor's death and within three years of the act of omission.
The 4th Circuit held that the petition was timely, reasoning that 9:5628 legislatively overruled the fourth situation in which contra non valentem might apply, but that the first, second and third situations were still viable and permitted an equitable review of the circumstances to determine if prescription would be tolled. Because the plaintiffs could not assert a cause of action against Dr. Casten until Minor's death on September 19, 1983, under contra non valentem the one year prescription of 9:5628 started on September 19, 1983, and the plaintiffs' petition was timely when filed on September 19, 1984.
Considering the provisions of La.R.S. 9:5628 and the rationale of the Gover and Minor cases, we summarize the following prescriptive scheme for wrongful death and survival actions in medical malpractice cases:
First, all such actions must be brought within the three year outside limit of 9:5628. The sole "exception" to this might be where a doctor intentionally and successfully concealed his malpractice until it was too late for the plaintiff to bring suit. However, rather than applying contra non valentem, such a case could be resolved by holding that the doctor's actions estopped him from raising the exception of prescription. Aside from this "exception," even the doctrine of contra non valentem could not save a claim that was not filed within the three year outside limit.
Second, as to wrongful death actions brought within the three year period, such claims should be brought either within one year of the act or its discovery, or within one year of the date of the death of the patient, whichever is later. The one year period running either from the date of the alleged act or discovery of the alleged act is imposed by the second of the four situations in which contra non valentem applies. While La.C.C. Article 2315.2 does not control instead of 9:5628, under the second arm of the contra non valentem doctrine the result will be in harmony with the result which would obtain from application of Article 2315.2. Regardless, suit must be brought within the three year outside period.
Third, in situations involving survival actions, the same rules will apply as in wrongful death actions, with the exception of the situation in which the patient knows of the alleged act of malpractice, but refuses or neglects to file an action for a period in excess of one year, subsequent to which the patient dies. In this situation, the survival action should be considered prescribed before the patient's death, and his survivors should have no survival action on his behalf. Again, while the provisions of La.C.C.P. Article 2315.1 do not govern instead of 9:5628, the result of applying the second arm of the contra non valentem doctrine to survival actions is in harmony with the result obtained by applying the provisions of Article 2315.1.
By utilizing the scheme outlined above, the legislative intent to establish a three year cut-off period will be preserved, while the doctrine of contra non valentem will not be overruled in its entirety. Furthermore, the intent behind Articles 2315.1 and 2315.2 will also be implemented without making 9:5628 subservient to the provisions of those two Civil Code articles.
Applying this scheme to the facts of the instant case, the plaintiffs' claims were not prescribed. While the claims were filed more than one year after the alleged negligent act, and more than one year after the discovery of the alleged negligent act, the claims were filed less than one year after *1271 Dunn's death and within the three year outside period. Therefore, the trial court did not err in overruling the exceptions of prescription.
For these reasons, the judgment of the trial court overruling the exceptions of prescription is affirmed and the case is REMANDED to the trial court for further proceedings. Costs in this court are assessed one-half to each of the two defendants.