607 So.2d 878 (1992)
Frank H. TAYLOR, et al., Plaintiffs-Appellants,
v.
Dr. William R. GIDDENS, et al., Defendants-Appellees.
No. 24054-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
*879 Garic Kenneth Barranger, Covington, Edmond Thomas, Shreveport, for plaintiffs-appellants.
Pugh, Pugh & Pugh by Robert G. Pugh, Jr., Shreveport, for defendant-appellee Dr. Carlisle.
Cook, Yancey, King & Galloway by Samuel W. Caverlee, Cynthia C. Anderson, Shreveport, for defendant-appellee Dr. Giddens.
Before NORRIS, HIGHTOWER and STEWART, JJ.
STEWART, Judge.
Connolly Logan Taylor died of cancer on January 9, 1985. On January 8, 1986, her husband, Frank H. Taylor, and children filed a claim with the commissioner of insurance against Dr. William R. Giddens and Dr. J.E. Carlisle under the Medical Malpractice Act (LSA-R.S. 40:1299.41, et seq.). Plaintiffs alleged that defendants negligently failed to diagnose Mrs. Taylor's esophageal cancer when she was tested in June 1982. The trial court sustained defendants' exceptions of prescription. Plaintiffs appeal, alleging that defendants' negligence was not discovered until after Mrs. Taylor's death and that the running of prescription did not commence until her death. We affirm.

*880 FACTS
Mrs. Taylor consulted Dr. Giddens in June 1982, complaining of difficulty in swallowing (dysphagia). Giddens referred her to Dr. Carlisle, a radiologist, for a GI series of X-ray tests. She saw Dr. Carlisle for the GI series on June 29, 1982. The GI-series includes a fluoroscopic examination of the esophagus, stomach and duodenum, with films of the gastroesophageal junction. Dr. Carlisle's report stated that the esophagus was normal, and Dr. Giddens informed Mrs. Taylor of this finding.
In September 1982, Mrs. Taylor went to see gastroenterologist Dr. Tom Allen. Allen performed tests and, a few days later, diagnosed Mrs. Taylor as having cancer of the esophagus. Soon thereafter, Mr. Taylor called Dr. Giddens and told him about the cancer and also told Dr. Giddens that this failure to diagnose probably killed Mrs. Taylor.
Mrs. Taylor underwent an extensive operation on her esophagus, after which she appeared to recover. But, by May 1984, the Taylors learned that the cancer had metastasized.
Mr. Taylor contacted attorney Troy Bain and, on May 11, 1984 filled out a "Medical Malpractice Interview Form" for Mr. Bain. Bain discussed with Mr. Taylor the prescription of the malpractice claim. Prior to Mrs. Taylor's death on January 9, 1985, Mr. Taylor did not contact Mr. Bain again.
In January or February 1985, Mr. Taylor talked with Dr. Giddens and Dr. Carlisle. Giddens told him that Carlisle did not X-ray the upper portion of Mrs. Taylor's anatomy which Giddens intended at the time the GI series was requested. Carlisle told him that he performed a lower GI series and that Giddens did not request the upper GI series, which would have been appropriate to diagnose the cause of her dysphagia. In essence, a breakdown in communication because the term "GI Series" had a different meaning for each doctorled to the failure to diagnose Mrs. Taylor's cancer in June 1982.
On January 8, 1986, Mr. Taylor filed a petition with the Commissioner of Insurance for appointment of a medical review panel. Pursuant to LSA-R.S. 40:1299.47(B)(2)(a) and (b), Drs. Giddens and Carlisle each filed, in the First Judicial District Court, an exception of prescription based on both one and three-year prescription. Several depositions were filed, as well as Mr. Taylor's affidavit. The trial court found that prescription had run, but allowed Taylor to amend his petition.
Mr. Taylor filed a third supplemental and amended petition alleging that Drs. Giddens and Carlisle withheld information of an improper diagnosis. Each doctor again filed an exception of prescription, noting that there had been no diagnosis of cancer of the esophagus which was hidden from the patient or parties. The trial court sustained the renewed exceptions of prescription. Plaintiffs, Mrs. Taylor's husband and children, appeal.

DISCUSSION
Appellants contend that, by virtue of the doctrine of contra non valentem agere nulla currit praescriptio, Mrs. Taylor's death was the moment at which prescription commenced running because they were prevented from instituting suit (1) for legal cause, as well as (2) due to conditions related to the proceedings. According to plaintiffs, the legal cause is the fact that courts could not recognize the action because it did not exist for these plaintiffs until the death of their wife or mother; the condition connected with the proceedings is that suit prior to her death by plaintiffs would have been premature.
Appellants further assert that the R.S. 9:5628 three year prescription applies only to those causes of action which the decedent, herself, could have brought. They argue that, because the three year prescription had not run at the time of Mrs. Taylor's death, they had one year after her death to begin this action. In Lambert v. Michel, 364 So.2d 248 (La.App. 3d Cir. 1978), writ denied, 366 So.2d 917 (La.1979), cited as appellants' support for this argument, the court stated that because R.S. 9:5628 is silent on (1) the survival action and (2) the wrongful death action, the statute *881 must be considered a general statute which conflicts with, and must therefore defer to, the specific provisions of C.C. art. 2315. However, this court has declined to follow this reasoning in Lambert, supra. See Gover v. Bridges, 486 So.2d 1117 (La. App.2d Cir.1986), affirmed, 497 So.2d 1364; Dunn v. North Community Hospital, 545 So.2d 1267, 1269 (La.App. 2d Cir.), writ denied, 550 So.2d 633 (La.1989).
Actions for medical malpractice prescribe one year from the date of the alleged act of malpractice or within one year from the date of the discovery of the alleged act. However, all actions must be brought within three years from the date of the alleged act or they are forever barred. LSA-R.S. 9:5628. The language of the statute is unambiguous and provides no exception for either wrongful death or survival actions. Appellants' argument that this prescription applies only to actions which Mrs. Taylor could have brought is without merit.
LSA-R.S. 9:5628, rather than LSA-C.C. art. 2315, governs survival and wrongful death claims arising from alleged malpractice, however we recognized the doctrine of contra non valentem in Dunn, supra, 545 So.2d at 1270, as follows:
First, all such actions must be brought within the three year outside limit of 9:5628. The sole "exception" to this might be where a doctor intentionally and successfully concealed his malpractice until it was too late for the plaintiff to bring suit. However, rather than applying contra non valentem, such a case could be resolved by holding that the doctor's actions estopped him from raising the exception of prescription. Aside from this "exception," even the doctrine of contra non valentem could not save a claim that was not filed within the three year outside limit.
Second, as to wrongful death actions brought within the three year period, such claims should be brought either within one year of the act or its discovery, or within one year of the death of the patient, whichever is later. The one year period running either from the date of the alleged act or discovery of the alleged act is imposed by the second of the four situations in which contra non valentem applies. While La.C.C. Article 2315.2 does not control instead of 9:5628, under the second arm of the contra non valentem doctrine the result will be in harmony with the result which would obtain from application of Article 2315.2. Regardless, suit must be brought within the three year outside period.
The one year prescriptive period commences running on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Constructive knowledge sufficient to commence the running of prescription requires more than a mere apprehension that something might be wrong. Prescription does not run against one who is ignorant of the facts upon which his cause of action is based as long as such ignorance is not willful, negligent or unreasonable. Thus, even if a malpractice victim is aware that an undesirable condition has developed at some point in time after the medical treatment, prescription will not run as long as it was reasonable for plaintiff not to recognize that the condition might be related to the treatment. Harlan v. Roberts, 565 So.2d 482, 486 (La.App.2d Cir.), writ denied, 567 So.2d 1126 (La.1990); Maung-U v. May, 556 So.2d 221, 225 (La.App.2d Cir.1990), writ denied, 559 So.2d 1385 (La. 1990); Griffin v. Kinberger, 507 So.2d 821 (La.1987).
The focus is on the reasonableness of the inaction by plaintiffs. The rule is whether the cause of action was known or reasonably "knowable" by plaintiff. Prescription does not run only as long as it is reasonable for plaintiffs not to recognize that the condition may be related to treatment. When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to plaintiff. Inaction by plaintiff for more *882 than one year under these circumstances is not reasonable. Harlan, and Maung-U, both supra.
Each case must be decided on its own peculiar facts. The law does not require that a patient be informed by an attorney that he has a medical malpractice action before prescription will begin to run. Likewise, it is not a requirement that a patient be informed by a medical practitioner of possible malpractice before prescription will begin to toll. The court may take into consideration such factors as the plaintiff's educational background, intelligence and past experience with medical procedures in assessing whether or not he has knowledge. See Harlan, supra; Lambert v. Metrailer, 485 So.2d 69 (La.App. 1st Cir.), writ denied, 488 So.2d 1023 (La.1986).
The alleged negligent actfailure to diagnose the cancer due to failure to take the proper X-rayoccurred on or about June 29, 1982. Appellants filed their claim with the Commissioner of Insurance on January 9, 1986. Because their claim was prescribed on its face, appellants bear the burden of showing suspension or interruption of prescription. Finch v. Lake, 396 So.2d 391, 392 (La.App. 1st Cir.1981).
In their third supplemental and amended petition, appellants allege the following:

I.
That the death of the late Connolly Logan Taylor was due inter alia to the failure of Dr. William Giddens and Dr. J.E. Carlisle timely to diagnose the cancer of plaintiffs' decedent, and further that the failure to file within a three year period from July 2, 1982, was due to an improper and an unjustified and guiltful withholding by them of the information uniquely within the knowledge of Dr. Giddens and/or Dr. Carlisle that an improper diagnosis had been made in July of 1982, following a time when Dr. Giddens and/or Dr. Carlisle either knew or should have known of the impropriety of the tests performed on Mrs. Taylor and the resulting error in the diagnosis bringing into operation the doctrine of contra non valentem agere nulla currit praescriptio as defined in the jurisprudence of the State of Louisiana.
However, the record does not reveal any "unjustified and guiltful withholding" of information.
When Mrs. Taylor was diagnosed with esophageal cancer in September 1982, Mr. Taylor called Dr. Giddens and indicated that Giddens' failure to diagnose the cancer in June 1982 had killed his wife. Mr. Taylor also stated that he suspected a "foulup" once the metastasis was found in May 1984. Mr. Taylor contacted attorney Troy Bain and, on or about May 11, 1984, filled out a "Medical Malpractice Interview Form." He indicated on the form that he first knew of the doctors' wrongful acts in September 1982 or May 1984. However, it was not until after Mrs. Taylor's death in 1985 that Mr. Taylor inquired about the circumstances attendant to the June 1982 test and diagnosis. Each appellee answered his questions when he asked in 1985. The record contains no indication that appellees either withheld information or gave misleading or erroneous information to appellants regarding their failure to detect the cancer in June 1982. See and compare, Gover v. Bridges, supra.
Mr. Taylor's statement to Dr. Giddens after the September 1982 diagnosis reflects his knowledge of facts strongly suggestive that the cancer might have been detected earlier but for Dr. Giddens' act, omission or neglect. The record reveals no facts which show an effort by the health care providers to mislead or cover up information which was available to Mr. Taylor through inquiry or professional medical or legal advice. We conclude that the facts and cause of action were reasonably knowable to appellant in September 1982.
The record shows that Mr. Taylor did make the inference and conclusion of the relationship between appellees' failure to diagnose the cancer, and the subsequent diagnosis of cancer and its metastasis, more than one year before he filed the January 9, 1986 claim with the insurance commissioner. The record also indicates that he recognized the possibility of this *883 relationship more than three years before filing the claim.
In September 1982, Mr. Taylor was aware that appellees did not diagnose cancer during the June 1982 tests, but he did not ask about the procedures until January or February 1985. Under these facts, we do not find it reasonable for Mr. Taylor to wait until after the death of his wife to inquire about the failure to diagnose. We find that, at the time of Mrs. Taylor's death, more than three years had passed since Mr. Taylor had the knowledge required to commence the running of prescription. Accordingly, the one year extension of time to file as recognized in Dunn, supra, does not apply in this case. The trial court properly found that appellants' claim had prescribed prior to being filed and, pursuant to LSA-R.S. 40:1299.47(2)(b), dissolved the claim. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.